RICHARD WORTHINGTON, Appellant, *against* MARY T. PARKER, Respondent.

(Decided March 13th, 1885.)

During the term of a lease by defendant to plaintiff of the lower portion of a building owned by the former, it became necessary for defendant to change the place of the pipes which conducted water from the roof of the building, and to provide and put up new pipes for that purpose. To do this a firm of tinsmiths were employed and instructed on behalf of

defendant by an agent having due authority from defendant to do so, whom the agent had previously employed and considered to be skillful workmen ; and one of that firm personally supervised the work as it was done by their workmen, and, as he testified, examined it when done. A loose or open joint was made in the pipe where it passed through a wall of the building, and was left unsoldered ; in consequence of which rain water from the roof ran through the opening and down in and along the wall, and injured plaintiff's goods in the lower part of the building. *Held*, that defendant was liable to plaintiff in damages for such injury.

Defendant was not relieved from liability by a clause in the lease that plaintiff should not claim for " damages caused by the elements, by leakages in roof or piping ; " as the damages were the result of leakage of the piping caused, not by the elements, but by the negligent manner in which the pipes had been put together upon re-adjusting them, after the lease was executed and plaintiff was in possession.

APPEAL from a judgment of this court entered upon the dismissal of a complaint.

The facts are stated in the opinion.

*James R. Marvin*, for appellant.—The affirmative defense set up in the answer—the covenant on the part of plaintiff not to make any claim for damages caused by leakage in the roof, etc.—was properly overruled. The alteration in the pipes that caused the damage was made after the execution of the lease. The parties are presumed to have made their contract with reference to the building as it stood at the time (*Liddle* v. *Market Fire Ins. Co.*, 4 Bosw. 179; *Hasbrook* v. *Paddock*, 1 Barb. 635–638 ; *Springsteen* v. *Samson*, 32 N. Y. 703 ; *Bancroft* v. *Winspear*, 44 Barb. 211; *Blossom* v. *Griffin*, 13 N. Y. 569; 56 N. Y. 420; 1 Greenleaf Evid. § 277).

The case is not affected by the fact that plaintiff was defendant's tenant. He was tenant of the lower floor and basement only, the upper part, including the roof, being retained by the defendant. The lease was appealed to only to show that plaintiff was rightfully in possession. The position that the defendant sustained to the plaintiff was not unlike that of an adjoining owner (*Eakin* v. *Brown*, 1 E. D. Smith, 36, 44; *Stapenhorst* v. *American Manuf. Co.*,

46 How. Pr. 510; *Henkel* v. *Murr*, 31 Hun 28; *Bald* v. *O'Brien*, 17 Week. Dig. 466; 2 Daly 140; 10 Hun 151; 51 How. Pr. 500; 56 N. Y. 420; 18 Week. Dig. 343; 1 Daly 178).

The doctrine *sic utere tuo ut alienum non laedas*, is applicable to this case. This principle may be invoked in all cases where the owner of land allows water to flow from his own premises to that of his neighbors and causes damage; where by an improper system of drainage, or a failure to keep drains in proper repair, water is diverted and an injury committed, the law holds the delinquent amenable (*Jutte* v. *Hughes*, 67 N. Y. 267, 273; 15 Barb. 96; 4 Lans. 51; 21 Barb. 409; 3 N. Y. 463; 2 N. Y. 159, 163; 67 N. Y. 204; 35 N. Y. 520; 4 N. Y. 199; 37 N. Y. 318; 12 N. Y. 486; 92 N. Y. 10; 72 N. Y. 470).

The act of defendant in the construction of the pipe followed by the flow of water upon plaintiff's premises was a trespass (*Mairs* v. *Manhattan Real Estate Assoc.*, 89 N. Y. 498; *St. Peter* v. *Denison*, 58 N. Y. 417; *Hay* v. *Cohoes Co.*, 2 N. Y. 159, 163). The defendant is liable irrespective of any question of negligence.

The court erred in holding that Spence & Co., who did the work as contractors for defendant, were the only parties liable, following the cases of *Blake* v. *Ferris* (5 N. Y. 48); *Peck* v. *Mayor* (8 N. Y. 222); *Kelly* v. *Mayor* (11 N. Y. 432). These cases have no application. In a case like this the contractor is always the agent of the owner, and the owner will be bound by the agent's carelessness and negligence, for the reason that the defendant was bound to use her property in such manner that the plaintiff could sustain no injury. This is the doctrine of *sic utere tuo*, etc.

The removal of the roof pipes and the construction of others was one from its very character dangerous to the plaintiff; and the work, as actually done, was a nuisance (*Swords* v. *Edgar*, 59 N. Y. 28, 34; *Sulsbacher* v. *Dickie*, 51 How. Pr. 500; *Storrs* v. *City of Utica*, 17 N. Y. 104; *Congreve* v. *Smith*, 18 N. Y. 79; *Bruno* v. *City of Brooklyn*, 91 N. Y. 679; *Jutte* v. *Hughes*, 67 N. Y. 267; *Byrnes* v.

*City of Cohoes*, 67 N. Y. 204; *Vogel* v. *The Mayor*, 92 N. Y. 10; 53 Barb. 629; *Burgess* v. *Gray*, 1 C. B. 578; 8 Cal. 49; 89 N. Y. 498; *Bald* v. *O'Brien*, 17 Week. Dig. 466; 2 Daly 140; 10 Hun 151; 1 Daly 178; 18 Week. Dig. 343; 12 N. Y. 487; 3 N. Y. 468; 2 Denio 433; 3 Pet. 409; 23 Wend. 334, 458; 12 Wheat. 40; 3 Denio 433).

It was not requisite, to render defendant liable, that she should have been notified of the defects in the work (36 N. Y. 54, 58; 4 Hun 24; 56 Barb. 119; 37 N. Y. 568; 18 N. Y. 784). The defendant was chargeable with knowledge of the defects which a competent examination would have disclosed (*Vosburgh* v. *Lake Shore &c. R. R. Co.*, 94 N. Y. 374, 381; 4 Hun 99; 17 N. Y. 104; 59 N. Y. 500; 3 Daly 65). The fact that the injury occurred in the manner that it did is presumptive negligence on defendant's part. If the pipe had been properly constructed the injury would not have occurred (*Mullen* v. *St. John*, 57 N. Y. 567; 3 Man. & Gr. 515; 6 Barn. & Cr. 317; 13 Pet. 181). The presumption would have been sufficient to take the case to the jury without other evidence on that question.

The dismissal of the complaint on the sole ground that Spence & Co., who did the work, were the only parties liable, and that the defendant was not, was erroneous. Where the injury occurs after the completion of the work the contractor is not liable to third parties (6 N. Y. 397; 2 N. Y. 165; 56 N. Y. 124; 51 N. Y. 194; 42 N. Y. 351; 18 N. Y. 79). It is only where the act complained of is injurious to health or dangerous to life that third parties can have recourse to the contractor, where the injury happens after the completion of the work. The defendant was bound to protect the plaintiff from injury. The employment by her of a contractor to do the work, however skillful he may have been, does not relieve her from liability even if the injury had occurred while the work was in progress (Shearman & R. on Negligence, § 15; 3 N. Y. 469; 2 Exch. 251; 6 Hurlst. & N. 488; 19 Com. B. N. S. 480; L. R. 1 H. L. 93; 18 N. Y. 79; 29 N. Y. 591; 23 Wend. 346; 15 Watt 230).

Where the injury occurs after the completion of the work, the owner, and not the contractor is liable for injuries to third parties (*Mayor of Albany* v. *Cunliff*, 2 N. Y. 165; *Bailey* v. *Mayor*, 3 Denio 433; *Congreve* v. *Smith*, 18 N. Y. 79, 83; *O'Rourke* v. *Hart*, 7 Bosw. 511, 514; *Vogel* v. *Mayor*, 82 N. Y. 10; Taylor Landlord and T. § 175, and cases cited; Shearman & R. Negligence, § 84, and cases cited; *Smith* v. *Milne*, 2 Dow, 290). The contractor is always the agent of the principal as to the result of the work.

*John B. Whiting*, for respondent.—The doctrine of *respondeat superior* applies to this case and relieves the defendant from liability. There was no negligence on the part of the defendant; she did all she could; workmen of good reputation were employed, and instructions given to do the work in the best manner. Neither she nor her agents were practical plumbers, and they could not point out the way in which the work should be done (See *Devlin* v. *Smith*, 89 N. Y. 470; *Earl* v. *Beadleston*, 42 N. Y. Super. Ct. 294).

There is a distinction between this case and those in which defendants have been held liable notwithstanding the injury was the result of the act or neglect of an independent contractor. In cases against city corporations, it has been held that they cannot escape liability by showing an independent contract to have the work performed, because they owe a duty to the public to see that the streets are kept clear and in good condition. So in the case of *Vogel* v. *The Mayor* (92 N. Y. 10), it was held that the work to be done there was in itself of such a character as to be dangerous, and that consequently the defendant was liable on that ground, as well as for having allowed the work to remain unfinished for many years. The distinction is well stated in *Burmeister* v. *N. Y. Elevated R. R. Co.* (47 N. Y. Super. Ct. 264). See also *King* v. *New York Central, &c. R. R. Co.* (46 N. Y. 181); *Sulzbacher* v. *Dickey* (51 How. Pr. 500); *Parkes* v. *Mayor* (8 N. Y. 222);

*Kelly* v. *Mayor* (11 N. Y. 432); *O'Rourke* v. *Hart* (7 Bosw. 511, and 9 Bosw. 301).

Upon the evidence, Spence & Co. must be held to be independent contractors. The test is not that there should be a formal written contract at a specified price. In *Devlin* v. *Smith* (*supra*) the contract was verbal. But the test is, were the details and management of the work left with the contractor, so that he became responsible for it; and were the workmen who did the work his servants or those of the owner?

An examination of the cases in which the principle *sic utere tuo ut alienum non laedas* is applied will show that this case does not fall under it. The general principle is undoubted, that every man must use his own property with a due regard to the rights of his fellow men, and if injury occurs through any misuse of his own property he is liable; but in order to hold a man for injuries, resulting without any negligence on his part, it is necessary that the work itself should be dangerous or unlawful in its character. Damages may be recovered for injuries occurring to the property of a third person through the unlawful use of one's own property; or by making repairs or doing work in its nature dangerous, such as blasting or putting on or removing a roof; but if the work itself is lawful, and not *per se* dangerous, there can be no recovery without proof of negligence (*Jeffe* v. *Harteau*, 66 N. Y. 398; *Losee* v. *Buchanan*, 51 N. Y. 476; *Livingston* v. *Adams*, 8 Cowen 175).

The clause in the lease, that the plaintiff would not make any claim for damages caused by leakages in the roof or piping, etc., was a complete defense to the defendant. Even if the claim on behalf of plaintiff that, the accident having occurred some time after the alteration of the pipe, the contractors were not liable, and hence defendant was, be sound, yet, as the evidence shows that Spence & Co. put in a soldered pipe, it must be assumed that the pipe became loose and imperfect after it was put in; and if so there

can be no fault on the part of the defendant and she is exempted from liability by the very terms of the lease.

CHARLES P. DALY, Chief Justice. — The nonsuit was improperly granted. In discussing upon this appeal whether it was or not, a wide examination of cases was gone into, upon the doctrine of *respondeat superior*, and as to the application of the maxim *sic utere tuo ut alienum non laedas* (to so use your own property as not to injure the rights of another), which to a considerable extent was unnecessary, for the point involved lies within a narrow compass, and is settled by the authority of adjudged cases.

The defendant is the owner of the building at the southeast corner of Broadway and Ninth Street, in this city; the store of which the plaintiff rented from her authorized agent, and in which he keeps a bookstore. During his tenancy, in consequence of a defect in the pipes that conducted the water from the roof of the building, a portion of the water ran from an opening in a pipe, through or along the face of the wall and into the plaintiff's store, injuring a large quantity of his books.

As the building belonged to the defendant, and the plaintiff was a tenant of the store only, the duty was upon her to keep the building in ordinary repairs, and it was no answer to the plaintiff's claim to be indemnified for the injury he received from its not being in proper repair, that the pipes conducting the water from the roof had to be shifted, and the injury arose from the want of care or skill of the tinsmith who was employed by her agent to do what was required in making this alteration (*Payne* v. *Rogers*, 2 H. Bl. 350); that is, in his allowing an elbow to be put upon one of the leaders, which was half an inch wider than the leader upon which it was put; thus leaving, after the work was finished, an aperture or loose joint in the pipe through which a portion of the water ran out and caused the injury, whereas, if the aperture had been closed by being properly soldered this would not have happened, as the whole of the

water would then, at the turn of the elbow, have flowed down the leader to its final outlet.

A real estate broker, William A. Griswold, had, by the defendant's authority, charge of the letting of the building; and in respect to repairs or alterations in it, he was allowed by her to do whatever, in his judgment, he "thought necessary to be done, as long as they were small repairs," and had generally, as he testified, "authority to preserve the property, and to do anything that was necessary in that direction," which he did without consulting her, and paid for, charging her with the amount so paid, in the monthly, quarterly and semi-annual statements that he made to her.

As the occupant of an adjoining building, upon the roof of which the water of a pipe or leader from the defendant's building was discharged, was about to build an elevator on the rear of this adjoining building, which would interfere with the leader carrying the water off the roof of the defendant's house, it became necessary to remove that leader farther away, so as to clear the elevator, and to put a leader upon the southerly side of the defendant's building, by which the water would be conducted to the rear of that building. This being explained to Griswold, the defendant's agent, he instructed his partner, McCreary, to direct Spence & Co. to do the work required by this alteration, Spence & Co. being tinsmiths who had previously worked for Griswold, whom he had known for fourteen years, and considered skilful workmen; and McCreary so directed them, telling them to do the work in the very best manner. He described to them the manner in which the leader was to be let out, how to put it in and solder it; that the pipe was to be changed that ran through the fire-wall, and then a leader was to be run along the wall to the rear of the building to carry the water off, which made it necessary to connect the leader that came through the wall, which was a $3\frac{1}{2}$ inch pipe, with the other leader, by an elbow joint. Hutchinrider, one of the firm of Spence & Co., superintended the doing of the work. After it was done he examined it, found, as he testified, that it had been done according to his orders,

and "in the best shape and manner that it could be done;" so that it was from his want of care or skill that a $3\frac{1}{2}$ inch leader which was connected with an elbow of 4 inches was, after the work was done, left open with an aperture of half an inch, through which the water came that caused the damage. He denied that the pipe was left in that state; but it was found in that condition after the accident, and if the case had been left to the jury they would have been warranted in finding that the water came, as the expert witnesses testified, through this aperture, which should have been closed up by those who did the work.

In making the change in the arrangement of the pipes that conducted the water from the roof of her building, the defendant was a principal and Spence & Co. were her agents, through whose carelessness or want of skill in leaving the pipe in the condition in which it was, the injury happened, and for an injury sustained by her tenant, under such circumstancés, she is answerable (*Payne* v. *Rogers*, 2 H. Bl. 350; *Leslie* v. *Pounds*, 4 Taunt. 649; *Todd* v. *Flight*, 9 Com. B. N. S. 388, 389; *Gandy* v. *Jubber*, 5 Best. & S. 78; *Mayor &c. of New York* v. *Corlies*, 2 Sandf. Super. Ct. 301; *Waggoner* v. *Jermaine*, 3 Denio 311, 312; *Mayor &c. of New York* v. *Bailey*, 2 Denio 445; *Cleghorn* v. *Taylor*, 18 D. 664, Hay 246; Taylor's Landlord and Tenant [5th ed], § 175)

It may now be said to be settled by the authorities, that the liability of any one other than the party who has done the wrongful act, proceeds, as was said by Baron ROLFE, in *Hobbit* v. *Railway Co.* (4 Wels. H. & G. 254), on the maxim *qui facit per alium, facit per se;* that the party employing has the selection of the party employed; and it is therefore reasonable that he who has made choice of a careless or unskilful person to execute his orders, should be responsible for any injury resulting from the want of skill or want of care of the person so employed; but that neither the principle nor the rule itself applies to a case where the party sought to be charged does not stand in the character of employer of the party whose negligent act has occasioned the injury. "The right of selection," says SELDEN, J., in *Kelly*

v. *The Mayor, &c. of New York* (10 N. Y. 436), "lies at the foundation of the responsibility of a master or principal for the act of his servant or agent . . . . . and no one can be held responsible as principal who has not the right to choose the agent from whose act the injury flows." This is the rule, and the reason that has been given for it in the cases by which it has been settled (*Hobbit* v. *Railway Co.*, 4 Wels. H. & G. 254; *Quarman* v. *Burnett*, 6 Mees. & W. 509; *Laugher* v. *Pointer*, 5 Barn. & C. 558; *Blake* v. *Ferris*, 5 N. Y. 48; *Pack* v. *Mayor &c. of New York*, 8 N. Y. 225; *Kelly* v. *Mayor &c. of New York*, 11 N. Y. 432). And the present case is one that comes within it, for the defendant stood in the relation of employer to Spence & Co., through whose negligence in leaving the water pipe in the condition in which it was the injury occurred. They were selected by her authorized agent to do what was required to be done. They were directed as to the manner in which the work was to be done—that is, how the pipe was to be run through the wall and the connection put on and soldered. In the case of workmen employed to do a job like this, she, or her agent, had the right to dismiss them at any moment, if not satisfied as to their ability or mode of doing it; and as she, through her agent, selected them, she is responsible for the injury that arose from having made the choice of unskillful or careless persons to do what was to be done (*Stone* v. *Codman*, 15 Pick. 297; *Randelson* v. *Murray*, 8 Adolph & E. 109; *Milligan* v. *Wedge*, 12 Adolph & E. 737; *Cleghorn* v. *Taylor*, 18 Sess. Cas. 2d Ser. 664 No. 126).

The point has been expressly adjudged in *Leslie* v. *Pounds* (4 Taunt. 649). It was decided in that case, where a landlord was held answerable for an injury assumed to have arisen through the carelessness of workmen employed in making repairs in a house, that, where the obligation of making repairs is upon the landlord, as he determines what the repairs shall be and directs the making of them, he is therefore the principal, and as such, is answerable for the acts of the person he employs.

In *Stone* v. *Codman* (15 Pick. 297), an action was brought against the defendant for damages sustained by the plaintiff through the negligence of one Lincoln, who was in the employ of the defendant, in digging a drain from the defendant's house, whereby the tide-water was let into the plaintiff's cellar, and the merchandise that he had stored there was damaged.

The plaintiff recovered, and the judgment was affirmed upon appeal. Chief Justice SHAW, in delivering the opinion of the court, after remarking that it was often a question of much nicety, and that there were complicated cases in which it was extremely difficult to decide whether the relation of master and servant, in legal contemplation, existed, said that in the case before them the court were of opinion that if Lincoln was employed by the defendant to make a drain upon the defendant's land, and extending thence to the public drain, he, Lincoln, *procuring the necessary materials, employing laborers, and charging a compensation for his own services and his disbursements,* he must be deemed, in a legal sense, in the service of the defendant, to the effect of rendering his employer responsible for his want of skill or want of due diligence and care; and that, if the plaintiff sustained damage by reason of such negligence, the defendant was answerable. This case is so much like the present one in all essential particulars that it must be regarded as a direct authority upon the question involved.

Where the injury has been done by a sub-contractor, or by a workman employed by one who has contracted to do the work, then, as the person for whom the work is done does not stand in the relation of master and servant or principal and agent to the sub-contractor or workman who did the injury, and has had nothing to do with selecting him, he is not answerable for his negligence.

This was the case in the decisions that have been cited of *Blake* v. *Ferris, Pack* v. *Mayor &c. of New York, Kelly* v. *The Same,* which are the leading cases, in this state, upon the limitation of the doctrine of *respondeat superior.* But, in the present case, the injury arose from the negligence of

Hutchinrider, one of the firm of Spence & Co., who superintended the work, examined it after it was done, and through whose want of care or want of skill it was left in the condition that caused the injury. The firm of which he was a member was employed by the defendant's authorized agent to do the work, and, as respects the liability of a principal, it makes no difference whether the agent or servant is employed by the master directly or through the intervention of an agent authorized to employ agents or servants for him (*Quarman* v. *Burnett*, 6 Mees. & W. 509), and the test, according to WILLIAM, J., in *Milligan* v. *Wedge*, (12 Adolph. & E. 743), is, who employed the person who did the injury.

In *Pickard* v. *Smith* (10 C. B. 479), another Justice, WILLIAMS, in adverting to the rule as stated by him that, if an independent contractor is employed to do a lawful act, and in the course of the work he or his servants commit some casual act of wrong, or negligence, the employer is not answerable—remarks, that this rule is, however, inapplicable where the contractor is intrusted with the performance of a duty that is incumbent upon his employer, and neglects its fulfilment, whereby an injury is occasioned ; that it furnishes no excuse that the employer intrusted this duty to a person who neglected it.

Here it was the duty of the defendant when she, or her agent, had the alteration made in the pipes, to see to it that they were so readjusted that the water would flow regularly through them to their outlet, and that all the joints and connections through which water must necessarily pass in its transit, were carefully closed and sealed ; and that she left this duty to a tinsmith, who neglected it, is no excuse, she being under obligation to keep the building in repair.

Ordinarily a servant or agent is not answerable to a third person, for an injury arising from the agent or servants nonfeasance, or omission of duty in the course of his employment, upon the ground that he owes no duty to the party injured, but is answerable only to his immediate employer (*Losee* v. *Clute*, 51 N. Y. 496, 497 ; *Mayor &c. of Albany* v. *Cunliff*, 2 N. Y. 165 ; *Loop* v. *Litchfield*, 42 N. Y. 351 ;

*Thomas* v. *Winchester*, 6 N. Y. 410 ; *Henshaw* v. *Noble*, 7 Ohio St. 231; Story Agency §§ 308, 309).

The only qualification of this rule—if it may be called such—is where the injury is done in disregard of a duty which the one doing it owed to the public; as where a person employed to build a scaffold for workmen, builds it so imperfectly as to render the use of it dangerous to human life ; in which case, he is the principal, primarily liable for an injury caused by the insecurity of the scaffold (*Devlin* v. *Smith*, 89 N. Y. 470) ; or where the act of the agent or servant who caused the injury was wilfully done, so as to amount to a misfeasance or intentional and positive wrong, which would be the case if Hutchinrider had intentionally left the aperture open that the water might flow through, knowing that the necessary and natural effect of it would be to run into and upon the plaintiff's store and injure his property—which could not be assumed in this case; for the utmost that the evidence would warrant would be that it was through his want of care, or want of skill in superintending and examining the work after it was done, that an aperture was left, through which the water flowed that caused the injury.

It would appear, therefore, upon the authorities cited that an action could not be maintained by the plaintiff against Spence & Co. to recover damages from them for the injury. And if it could not, then the plaintiff would be without redress for the injury he has sustained unless he has a right of action against the defendant as the landlord and owner of the building, whose duty it was to keep it in repair ; whereas, if the defendant is held responsible for the damage done by the want of skill or the carelessness of those she selected to do the work, she has a remedy over against them (Story Agency, Ch. VIII).

This was the conclusion arrived at in *Cleghorn* v. *Taylor* (18 Sess. Cas. 2d Ser., 64, No. 126) where the question of the liability of an owner of a building, for an injury arising under circumstances very nearly resembling those in the present case, was carefully considered, and in which,

I think, it may be said that all the questions that arise here were passed upon.

The owner of a building, in that case, allowed a tenant to put what was known as a chimney-can on the top of the building. The tenant, with the approval of the owner, employed a master slater to do the work, and seventeen days after the structure was put up, through the imperfect manner in which the work was done, the chimney-can blew down, and fell through the sky-light of an adjoining ware-room, injuring a quantity of china and crystal that was arranged there for sale.

It was found as a fact that neither the tenant nor the owner had interfered in any way with the execution of the work, or had done anything inconsistent with its being done in a secure and efficient manner; so that the same point was substantially presented as in this case, of the employment of a master workman, apparently competent to do what was required. It was argued in that case, as in this, that a competent workman having been employed, and the accident having arisen by his imperfect workmanship, and not through any fault of the owner or of the tenant, he and not they were answerable for the consequences. The question presented by the case was considered by the court as of the very highest practical importance; the English as well as the Scotch authorities were examined; all the judges delivered opinions, and the conclusion was unanimously arrived at, that the owner of the building was the one that must answer to the parties who had received the injury. The court put their decision upon the broad ground that the proprietor of a building was liable for damages caused by his property being in an insecure or insufficient state; that that was a burden imposed upon an owner of property, and that it was not necessary to show that he wilfully put or knowingly allowed it to remain in an insecure condition. That he was the one liable to the party injured, and not the workmen he employed, having his remedy over against them. That there was an obvious distinction between an injury caused by the condition of the building and one

caused by the personal and wrongful act of a contractor, or of those employed under him. That these were cases where a regular or verbal contract was entered into involving some continuance, and where generally the subject, so far as the work was concerned, might be said to be in possession of the contractor or his servants. But that, in the case before the court, the master slater, within the meaning of this distinction, was "not a contractor," but "simply a tradesman employed to do a short and simple job," and after a full recognition by the court of the distinction that exists in the case of contractors and their servants, or where those employed, and by whom or by whose servants the injury was done, were engaged in a distinct and independent employment—as in the case of the licensed carman in *De Forest* v. *Wright* (2 Mich. 368)—one of the judges, Lord WOOD, in declaring what the law is where the injury arises from the condition of the building, formulated the view taken of it by the court in these words, which, in my judgment, cover the present case: "When a proprietor," he said, "who has the right of selection, employs another to do a piece of work, it lies with him to see that it is well done; and if he takes it off the tradesman's hands he is presumed to have been satisfied with its execution. If, after that, damage is caused by its having been imperfectly done, I am of opinion that, in accordance with the general obligation under which the proprietor lies, and upon principle, the sound result is that the party whose property has been injured should have his claim for loss against the employer as the principal, leaving him (the employer) to seek his relief against the tradesman he employed."

There is another case, that of *Sturgis* v. *The Society for the Promotion of Theological Education at Cambridge* (130 Mass. 414), where the defendant, who was the owner of a building, employed a person to construct a drain from the cellar of his building to the public sewer, which had been constructed through a wooden barrier, which had been erected to keep out the tide-water; and the person employed to do the work did it so negligently and improperly that

after he had finished it, the tide flowed through the opening made in the barrier and into the plaintiff's cellar, to the plaintiff's injury; and it was held that, the defendant having undertaken to build the drain, it was his duty to make the barrier tight after laying the drain; and that it was no defense that he employed a contractor to do the work, who was negligent.

The cases upon which the respondent relies for the affirmance of the judgment are all distinguishable. In *Losee* v. *Buchanan* (51 N. Y. 476), the boiler that exploded was made by the defendants for a company that accepted it, after they had tested it and were satisfied with it; and the decision was put upon the ground that the defendants owed no duty to the plaintiff, but only to their immediate employers, the company; and in the action for the same injury against the stockholders and superintendent of the company (51 N. Y. 476), it was held that they were not liable, as the putting in of the boiler was lawful, and that they were not answerable for the accident, no fault or negligence on their part being shown, as no one can be made liable for injuries to the person or property of another without some fault or negligence on his part. If they had employed a person to take charge of the boiler, through whose want of skill or care it exploded, the liability would have been the same as it is here, which is the distinction between the two cases.

In *Earl* v. *Beadleston* (42 N. Y. Super. Ct. 294), the defendant made a contract with one McGregor, to take down the front wall of his house, and it was held that he was not responsible for the weakening of his neighbor's party wall, arising from the negligence or unskilfulness of McGregor's workmen; the court holding, under the rule already stated, that McGregor was answerable, as the workmen who did the injury were employed by him, and they were not the servants or agents of the plaintiff.

And in *Devlin* v. *Smith*, (89 N. Y. 470), I have already pointed out that the builder of the scaffold, in that case, in addition to the duty which he owed to the party who employed him, owed a duty, also, to the public to build

it securely, and his disregard of this duty having caused the accident, he was directly liable, as principal, to the workman who had been injured, and not the person who employed him to build it; for there cannot be two principals separately liable for the same injury (*Hobbit* v. *Railway Co.* 4 Exch. 257; *Laugher* v. *Pointer*, 5 Barn. & C. 558).

The lease contained a clause that the defendant was not to be answerable "for damages caused by the elements, by leakages in roof or piping;" and it is claimed, upon this ground, that the defendant is not answerable, and that the nonsuit was right. The damages were not the result of leakage of the piping caused by the elements, but by the negligent manner in which they had been put together, upon readjusting them, after the lease was executed and the plaintiff was in possession. Clauses of this nature, exempting the landlord from what is incident to his obligation to keep the building in repair, are to be construed strictly; and to get at the real intent of the parties, covenants that are in large and general terms, are frequently narrowed and confined. What this clause means, is not leakage produced by the negligence of the defendant or of a person employed by her in putting in new pipes; but leakage which may result from ordinary wear and tear, or from the carelessness of tenants, or from the sudden action of the elements.

The judgment should be reversed and a new trial ordered, with costs to abide event.

VAN HOESEN, J.—I think that the tinsmiths were contractors, and not servants, and that the case does not at all rest upon the rule of *respondeat superior*. As to the liability of the defendants upon the facts, I agree with the Chief Justice.

LARREMORE, J., concurred.

Judgment reversed and new trial ordered, with costs to abide event.