102    221
d126    230
126    231

THE McKINNON MANUFACTURING COMPANY v. THE ALPENA FISH COMPANY, LIMITED.

*Sale—Delay—Recoupment—Implied warranty.*

1. In a suit brought by a contractor to recover the balance of the contract price due for an engine manufactured for the defendant for use on one of its fishing tugs, the defendant sought to recoup damages for the failure of the plaintiff to complete the engine within the time agreed upon in the contract, and introduced testimony tending to sustain its claim. The plaintiff's testimony tended to show that the defendant agreed to bring the tug from the yard where it was being built to plaintiff's dock in two weeks after the making of the contract, so that the engine could be placed in the tug, but that it was not so brought until more than three weeks had elapsed, and that plaintiff's work was thereby delayed. And it is held that the plaintiff had a right to have the jury pass upon the question of said alleged delay, and that, if they found that it was caused by the failure to bring the tug to plaintiff's dock within the time agreed upon, for such time the plaintiff was not to be charged with the delay, or damages in consequence of it.

2. Plaintiff further contended that the delay in completing the tug, if any, was occasioned by the builder of the tug, in not having his work done in time, and by another party, who did not complete the putting up of the smokestack in time. And it is held that the plaintiff could be held liable for its delay only, and not for the delay of the builder or the party who had contracted to put up the smokestack.

3. After the engine had been used for a time, the shaft was broken, and the defendant claimed to recoup damages for the expense of putting in a new shaft. Upon examination, the shaft put in by plaintiff was found to have one or more flaws in the material from which it was made. And it is held that the request of the plaintiff for an instruction that the plaintiff, in the absence of a warranty of the engine, could not be held responsible for the breaking of the shaft if the break was due to interior seams or defects, not known to the plaintiff, and which could not have been discovered by an examination of the shaft, should have been given.

4. Testimony was introduced tending to show that, after the plaintiff had commenced to build a pump in accordance with the contract, the engineer in charge of the tug, and who had been given authority by the defendant to oversee the work, and under whose directions the plaintiff had been directed to work, stated that he did not wish that kind of a pump, and the one in controversy was then made, under the orders and directions of said engineer. And it is held that the jury should have been instructed, as requested by the plaintiff, that, if they found the aforesaid facts, the defendant had no right to complain because the pump built differed from the one called for by the contract, and that the shipping of the pump back to the plaintiff would not entitle the defendant to make any claim therefor, if plaintiff declined to receive it.

Error to Bay. (Maxwell, J.) Argued June 27, 1894. Decided September 27, 1894.

*Assumpsit.* Plaintiff brings error. Reversed. The facts are stated in the opinion.

*J. L. Stoddard,* for appellant.

*T. A. E. & J. C. Weadock,* for defendant.

LONG, J. Plaintiff brought suit to recover the balance due upon the sale of a marine engine, which was built by it for defendant's fishing tug, under a written contract, for $1,000, and one throttle for the same, at $75. Five hundred dollars had been paid on the contract, leaving a balance of $575. Defendant pleaded the general issue, and gave notice of recoupment of damages on account of the improper construction of the engine in most of its parts, and for delay in not completing it within the time agreed upon. On the trial, plaintiff recovered the sum of $172, and now brings error.

Testimony was offered on the part of defendant tending to show the facts set up in the notice. Plaintiff, upon its part, introduced testimony tending to show that the engine was properly constructed and properly placed in the tug.

It was also contended by plaintiff that it was not liable for delay in building and placing the engine in the tug, but that the delay, if any, was occasioned by Davidson, the builder of the tug, in not having his work done within the time, and by Styninger, who did not complete the putting up of the smokestack in time; also, that the engine, while being built under contract, was in fact built and placed under the direction of defendant's engineer.

Upon the question of delay in completing the contract, the plaintiff requested the court to charge the jury:

"If you find that, when the contract was entered into, the defendant's manager, Mr. Alpern, promised the plaintiff that the tug would be brought over to plaintiff's dock at a certain time mentioned by him, so that the engine might be erected therein, and that the tug was not brought to plaintiff's dock at the time so specified, and that the plaintiff was thereby delayed in the work of constructing and placing the engine in the tug, and for that reason the engine was not completed until after the time mentioned in the contract, the plaintiff cannot be held liable for damages because of such delay.

"If Davidson and Styninger, or either of them, were not through with their work on the tug until the engine was ready to run, and they were not delayed in their work by the plaintiff, then the defendant has no ground for claiming damages from the plaintiff because the engine was not completed at the time required by the contract."

The contract was dated April 16, 1891, and under it the engine was to be completed and put in within five weeks from that date. Plaintiff gave testimony tending to show that the tug was to be brought around from Davidson's yard to plaintiff's dock in two weeks, so that the engine could be put in, but that it was not brought around there until more than three weeks had elapsed, and that the plaintiff's work was delayed by reason thereof; that, when brought over, it was not left long enough to place the engine in, but was taken back to Davidson's

yard to finish up the work there.    Plaintiff's witness, Mr. McLane, was asked:

" State whether or not you were delayed in the final completion of the engine by the fact that the tug was not brought over in the two weeks mentioned by Alpern."

He was also asked:

" What effect had the delay in bringing the boat over there, and not leaving it there sufficiently long to enable you to get the engine aboard, upon the final completion of the work,—whether it delayed it or not? "

These questions were ruled out, though not objected to by defendant's counsel, and yet the court charged the jury upon that point:

" The contract provided that the Alpern people were to take the tug over to the dock, so as to receive the engine aboard the boat.    That was done the same day it was launched, and was strictly on time on the part of Mr. Alpern; but when it was there, either by the consent of McKinnon,—it don't appear whether it was by his consent, or in opposition to his wishes,—it was taken immediately back to Davidson's, whose men were also at work putting on the upper works and finishing the tug; and all three of these parties, Mr. Styninger, Mr. McKinnon, and Mr. Davidson, were at work upon that tug at the same time. Now, I think perhaps there is a certain liability, joint as well as several.    I think, if the three of them detained the tug 15 days, either one might be charged with it in this suit; but it don't appear here in evidence whether Styninger was on time in the performance of his work, or whether Davidson was, and it won't do to charge the whole of it to McKinnon, unless the proof is very satisfactory.    There is evidence tending to show that he did not work a sufficient number of men on it for part of the time; but I submit that question wholly to you for your consideration, to fix the length of time and the measure of damages, and determine the amount of loss, if any there was, by not finishing the contract in time."

The court was in error in not permitting the witness McLane to answer, and in refusing these requests to charge.    If it was understood that the tug was to be

brought to McKinnon's dock within two weeks from the date of the contract, then it must be presumed that the contract was made in view of that time; and, if the defendant's tug was not brought there within that time, certainly the plaintiff could not be charged with the delay during that time. The plaintiff had the right to have the jury pass upon that question as one of fact, and, if they found that the delay was caused by the failure to bring the tug to McKinnon's dock within the time agreed upon, they should have been instructed that for such time the plaintiff was not to be charged with the delay, or damages in consequence of it. There was no such thing as a joint liability in the delay. The plaintiff could be held liable for only its delay, and not for the delay of either Davidson or Styninger.

It appears that, after some use, the shaft was broken, and among other damages claimed was the expense of putting in a new one. The evidence showed that, upon examination, the shaft was found to have one or more flaws in the material from which it was made. It was contended on the trial by the defendant that the plaintiff was liable for this, and the question was submitted to the jury with other claims for defects. The plaintiff asked the court to charge the jury that—

"Plaintiff did not warrant or guarantee the engine, and in no event can the plaintiff be held responsible for the breaking of the shaft if the break was due to interior seams or defects, not known to the plaintiff, and which could not have been discovered by an examination of the shaft."

This request should have been given. The vendor who sells an article of his own manufacture is liable for any latent defects not disclosed to the purchaser, arising from the manner in which the article is manufactured; and, if he knowingly uses improper materials, he is liable for that

also, but not for any latent defects in the material, which he is not shown to have known, and which could not be ascertained by proper examination. *Hoe v. Sanborn*, 21 N. Y. 552; *Bragg v. Morrill*, 49 Vt. 45; 2 Suth. Dam. (1st ed.) 409. In *Bragg v. Morrill, supra,* a shaft was sold by a machinist to be used for a special and known purpose. It was purchased by the machinist, and then turned and prepared for the reception of pulleys. It afterwards broke, because of a defect unknown to both plaintiff and defendant, and the plaintiff sued for damages therefor. The court held the defendant not liable, and said:

" We think the result of the cases on implied warranty is that the vendor of an article for a particular purpose does not impliedly warrant it against latent defects unknown to him, and which have been produced through the unskillfulness of some previous manufacturer or owner, without his knowledge or fault, except in those cases where the sale of the article by him is, in and of itself, legally equivalent to a positive affirmation that the article has certain inherent qualities inconsistent with the claimed defects, as is the case in the sale of provisions for domestic use. On this ground, the defendant is not liable, on an implied warranty of the shaft, for the latent defects that caused it to break, and were wholly unknown to him, and were not produced through any fault or unskillfulness on his part, but wholly through the fault or unskillfulness of the manufacturer of the shaft from the raw material."

In the present case the plaintiff's testimony showed that the plaintiff commenced to build a pump in accordance with the contract, when Smith said that he did not want that kind, and the one in controversy was then made, under his orders and directions. Smith was the engineer of the tug, and was given authority by the defendant to oversee the work, and the plaintiff was directed to work under Smith's directions. The court was asked to charge the jury:

"If you find that the plaintiff began the construction

of the pump mentioned in the contract, and that the completion of such pump was then abandoned, and another pump built, in accordance with the directions given to the plaintiff by Smith, and that it was the duty of Smith to oversee the work on behalf of the defendant, then the defendant has no right to complain because the pump built differed from the one called for by the contract, and shipping the pump back to the plaintiff would not entitle the defendant to make any claim therefor, if the plaintiff declined to receive it."

This request should have been given.

For the errors pointed out, the judgment must be reversed, and a new trial ordered.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred with LONG, J. McGRATH, C. J., concurred in the result.