126  225
148  ¹240

PEERLESS MANUFACTURING CO. *v.* BAGLEY.

LIABILITY OF LANDLORD—INJURY TO TENANT'S GOODS.

* A landlord agreed with his tenant to put in the building an automatic sprinkler system, designed for extinguishing fire. The landlord was inexperienced in the requirements and construction of the system, and employed an experienced, independent contractor to construct the plant. The independent contractor was guilty of negligence in putting in sprinkler heads designed to fuse at too low a temperature, in consequence of which damage resulted to the tenant. *Held,* that the landlord was liable to the tenant for the negligence of the contractor, and that the landlord's remedy was against the contractor.

Error to Wayne; Frazer, J.   Submitted February 1, 1901.   Decided April 2, 1901.

Case by the Peerless Manufacturing Company against John N. Bagley and others for negligence in the construction of a sprinkler system in premises leased to plaintiff. From a judgment for plaintiff, defendants bring error. Affirmed.

The facts in this case are undisputed. Plaintiff was engaged in the manufacture of clothing, and was tenant of a building owned by defendants. Throughout the building had been placed a number of water pipes, constituting an automatic sprinkler system, intended for extinguishing fire. On an extremely hot Sunday,—July 4, 1897,—in the afternoon, a sprinkler head in a pipe in this automatic sprinkler system opened, and the water flooded the building, damaging plaintiff's goods. The sprinkler head was beneath a skylight in the roof of the building. The skylight had glazed sloping sides and vertical ends

---

* Head-note by GRANT, J.

standing above the roof. A vertical section of the sky-
light formed substantially an inverted V. Across the
bottom, and about in the line of the roof, was a sash con-
taining panes of glass. Beneath this glass, curtains,
which could be moved, ran on wires. Two or three panes
of glass had been taken out of the bottom sash, through
one of which the water pipe ran up. It then turned, and
ran horizontally lengthwise of the skylight somewhat
below the point where the sloping sides of the skylight
united. Upon the top of this pipe were set the sprinkler
heads, from one of which the water was discharged. The
skylight was nearly 20 feet long by about 12 feet wide,
and it was 4 feet 3 inches vertically from the bottom
sash to the top of the skylight. The head itself was so
made that at about a given temperature an alloy in it would
fuse, and release a cap, and thus afford release for the
water in the pipe by gravity pressure from a tank on the
roof. It was intended that the alloy in these heads in
question should stand a temperature of about 155° Fah-
renheit before fusing, and they were stamped "155" to
indicate that fact. On July 10, 1897, after this accident,
the head which up to that time remained intact fused
when the temperature in the skylight was 146°. The
heads used in the skylight were of the same kind as those
used elsewhere throughout the building. Near the top of
each end of the skylight was an opening leading to a short
pipe which opened into the air. Beneath each opening
was a swinging window for ventilation. These ventilat-
ing windows, in hot weather, were usually kept open.
They were closed Saturday, July 3d, at 1 p. m., and
remained closed till after the accident.

The following facts are established by the testimony:

1. That the relation of landlord and tenant, and no
other, existed between the parties.

2. That there was no written lease, whether or not there
was an agreement for one.

3. That there was no covenant forming part of the oral
agreement for leasing that the premises were free from

defects and fit for use, or that the landlord would keep them in repair and fit for use; that that oral agreement was simply that the plaintiff should occupy the premises for a certain period at a certain rental.

4. That an agreement—which, if plaintiff's testimony is believed, was, in effect, a part of the agreement as to tenancy—was made by defendants, at the instance and for the benefit, at least in large part, of plaintiff, that there should be installed upon the demised premises a sprinkler system like that about to be installed in Burnham, Stoepel & Co.'s premises, and that this agreement was, without damage to plaintiff, performed as early as the September following the May or June which was the date of plaintiff's entry upon the premises demised to it.

5. That from September, 1896, to July, 1897, the sprinkler head had been part of the demised premises, which were in the actual occupancy of the plaintiff.

6. That defendants had no notice of any defect in the sprinkler head up to the time of the accident.

7. That the defendants did not plan, or by their servants install, the sprinkler system, but that they committed the whole work of installation, including planning, labor, and material, to the General Fire Extinguisher Company, under a clear and distinct contract; that that company is an experienced, competent, and reputable concern in its line of business; that defendants did not interfere with, or exercise supervision over, the work of installing, but left the work wholly in the hands of the extinguisher company.

8. That the work was inspected by an experienced insurance inspector before reduced insurance rates on the building and stock were procured.

9. That it is proper practice to put sprinkler heads in skylights.

10. That the extraordinary heat of the sun on July 4, 1897, caused a head in the skylight to open, which, under ordinary circumstances, remained closed.

11. That, if such opening is due to the fault of any one, it is to the fault of the General Fire Extinguisher Company.

The declaration charges neglect against the defendants, plaintiff's landlord, in negligently constructing an automatic sprinkler system. The court instructed the jury that the fact that the defendants "had used all ordinary

precaution in employing suitable people to put this system in, and letting the contract to a reputable concern to put it in, was of itself no defense against the action in this case." In other words, the defendants were held responsible for the negligence, if any, of the party who put in the sprinkler system. The jury found that the apparatus was negligently constructed, and rendered a verdict for the plaintiff.

*Wells, Angell, Boynton & McMillan,* for appellants.

*Maybury & Lucking,* for appellee.

GRANT, J. (*after stating the facts*). It appears conceded that there was evidence of negligence on the part of the General Fire Extinguisher Company in putting in the sprinkler heads in the skylight arranged to fuse at 155°. That temperature proved too low. They should have been arranged to fuse at a higher temperature. The sprinkler plant was installed in September. In the following July, with a temperature outside at 94°, one of the sprinkler heads fused. A few days afterwards the remaining sprinkler head, when the temperature outside was about the same, fused when the temperature in the skylight had reached 146°. It was undoubtedly assumed, on the part of the agents of the extinguisher company, that the temperature within the skylight would not reach that degree; but they made no effort to determine the degree of temperature of the skylight in hot weather. If they relied upon experiences elsewhere, it is not shown upon this record. An experienced witness for the defendants testified that they should be set with a leeway of about 30°, and that he would not locate a 155° sprinkler head at a place where he knew the temperature would reach over 135°. We must, therefore, enter upon a determination of the defendants' liability with the fact established that their contractor, the extinguisher company, was guilty of negligence.

It is also established that the defendants had had no ex-

perience with, or knowledge of, the construction of the sprinkler apparatus; that they employed a standard company of long experience and of good reputation, and that the system was one in common use. They had, therefore, exercised that prudence which the law requires in choosing independent contractors, and no negligence is directly attributable to defendants. It was to the interest of the defendants, as well as that of the plaintiff, to have a proper apparatus supplied. In case of flooding, both would be damaged.

Did the employment of such a contractor relieve the defendants from liability to plaintiff? They insist that it did; that the case is within the rule that, when one employs a competent, experienced, and independent contractor to do a lawful work, he is not liable, either for defects in the system or in the apparatus or machinery. The learned counsel cite *Devlin* v. *Smith*, 89 N. Y. 470 (42 Am. Rep. 311); *King* v. *Railroad Co.*, 66 N. Y. 181 (23 Am. Rep. 37); *Engel* v. *Eureka Club*, 137 N. Y. 100 (32 N. E. 1052, 33 Am. St. Rep. 692); *McCafferty* v. *Railroad Co.*, 61 N. Y. 178 (19 Am. Rep. 267); *Miller* v. *Railroad Co.*, 125 N. Y. 118 (26 N. E. 35). None of those cases involve the relation of landlord and tenant. They are cases coming clearly within the rule as to non-liability for the negligence of independent contractors. There is, however, another rule, and which may be called an exception to that above stated, viz., that, where one owes an absolute duty to another, he cannot acquit himself of liability by delegating that duty to an independent contractor. To apply the rule to the present case, it may be thus stated: Where a landlord undertakes to make repairs or improvements for his tenant, he cannot relieve himself of the consequences of neglect in the performance of his agreement by employing an independent contractor. Thus, where a landlord undertook to put a new roof on the building of his tenant, and he let the contract to an independent contractor to perform the work, and the goods were damaged by rain through the negligence of

the contractor, the landlord was held liable. *Wertheimer* v. *Saunders*, 95 Wis. 573 (70 N. W. 824). Where the landlord made repairs, and a joint of pipe was improperly constructed, whereby the water flowed from the roof through onto the plaintiff's goods, the landlord was held liable. *Worthington* v. *Parker*, 11 Daly, 545. Where a drain had been constructed by an independent contractor, and after its acceptance the water flowed through it into an adjoining cellar, through the negligence of the contractor, the owner of the building was held liable. *Sturges* v. *Theological Society*, 130 Mass. 414 (39 Am. Rep. 463). A landlord assuming to make repairs, though not required to do so by his lease, is responsible for his lack of skill in making them. *Gill* v. *Middleton*, 105 Mass. 477 (7 Am. Rep. 548); *Gregor* v. *Cady*, 82 Me. 131 (19 Atl. 108, 17 Am. St. Rep. 466).

Plaintiff had agreed with defendants that they should put in a sprinkler system. They could adopt whatever system they chose, and could make whatever contract they chose for putting it in. There was no contractual relation between plaintiff and the General Fire Extinguisher Company. We think that in reason, as well as authority, the rule of law is that the plaintiff can hold defendants for the negligence resulting in damage to it, and that the defendants have their remedy against the extinguisher company.

Counsel liken the case to that of one buying an appliance of a reputable dealer, which, through its negligent construction or make, works damage to a third person, and invoke the rule that a vendor or purchaser is not liable for latent defects in machinery; citing *McKinnon Manfg. Co.* v. *Alpena Fish Co.*, 102 Mich. 221 (60 N. W. 472), *Walden* v. *Finch*, 70 Pa. St. 460, and other cases. We think this is not a case for the application of that doctrine. There was no defect here in the system or in the apparatus. The former was good, and the latter properly constructed. There was no latent defect. The sole difficulty was that the extinguisher company erred in not

determining the temperature at which the sprinkler head should be set. *Walden* v. *Finch* was a case between bailor and bailee. The bailor had deposited his property in the warehouse of the bailee. The building fell through improper construction. It was held that the bailee, having done all in his power to erect a safe structure, was not liable for its occult defects. *McKinnon Manfg. Co.* v. *Alpena Fish Co.* involved the shaft of an engine, which broke from hidden and unknown defects.

Judgment affirmed.

The other Justices concurred.