FANNIE J. POOR *vs.* JOSHUA M. SEARS.

Suffolk.    November 11, 12, 1890. — October 26, 1891.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Owner of Building — Lease — Furnishing Steam Power by Appliances on Leased Premises — Negligence — Due Care — Proximate Cause — Evidence.*

If the owner of a building, who is engaged in furnishing for hire steam power to adjoining buildings, after leasing a part of his building, continues thus to furnish power by means of appliances upon the leased premises, he is bound to exercise reasonable care to see that such appliances are in suitable condition to perform the work without danger to persons rightfully on the premises and themselves in the exercise of due care; and if he, or his servants or agents, are negligent in the use or management of such appliances, such a person in the

employ of his lessee, who is injured thereby while in the exercise of due care, is entitled to recover of him for the injuries so sustained, irrespective of the lease or of any duty of the lessee under it to care for such appliances.

On the issue whether the owner of a building engaged in furnishing steam power for hire to adjoining buildings used ordinary prudence and care in the use and operation of certain shafting and pulleys for that purpose, evidence is competent that a shaft which broke and injured a person rightfully on the premises, was not sufficiently supported and should have had an additional hanger, that shelving underneath it would have tended to afford protection and was often placed under shafts similarly hung, and that safety would have been promoted by a larger shaft.

Under a declaration, in an action for personal injuries, alleging that the plaintiff was injured by a fall of a shaft through the "negligence and carelessness of the defendant," evidence is admissible that a subsequent examination of the broken ends of the shaft disclosed dark streaks extending from one third to one half way around it, as though there had been a flaw or a previous crack in it.

On the issue whether the owner of a building engaged in furnishing for hire steam power to an adjoining building, after leasing rooms in the building, used and exercised control over shafting and belting situated in such rooms, evidence is competent that, after an accident resulting from the breaking and fall of a shaft in the room, he repaired a stairway therein damaged by the fall, and caused a belt also therein to be sheathed, and evidence is also competent that his engineer continued to oil the shaft until it fell, and to lace the belts thereon when necessary, although the lease is already in evidence.

If the owner of a building, after leasing a part thereof, negligently continues to furnish power to an adjoining building by the use of improper appliances on the leased premises, and one of his lessee's employees is injured, the failure of such lessee or of his other employees to give to the employee injured any warning of the danger, does not constitute negligence, or a want of due care, on the part of such employee, or relieve such owner from the consequence of his own carelessness or of that of his servants.

On the issue whether the plaintiff, who was employed in a printing establishment and was injured by the fall of a shaft hung over a stairway connecting the fourth and fifth floors of the same, was in the exercise of due care, there was evidence that the plaintiff was a type-setter and worked on the fourth floor, and it was her duty to carry galleys of type to the fifth floor; that she remembered starting to go up the stairway with a galley of type, but nothing more until she found herself in the hospital; that a foreman, after sending a boy to the engineer to notify him that something was wrong, a few seconds before the shaft fell, called out from the top of the stairway to keep off the same; and that several other employees noticed that the shaft was out of order shortly before it fell, and some of them working near the plaintiff heard the foreman tell the boy to warn the engineer. It did not appear that the plaintiff's attention was called by any one to the condition of the shaft, or that she heard any remark about it. *Held*, that the evidence was sufficient to enable the jury to pass fairly upon the question of due care on the plaintiff's part, and that it was properly left to them to do so.

TORT, for personal injuries. The first count of the declaration was as follows: "And the plaintiff says that the defendant is the owner of premises No. 41 Arch Street, in said Boston, and

also owns and has the care of certain machinery in said build-
ing; and defendant negligently and carelessly permitted a part
of his machinery to remain in a dangerous condition and posi-
tion.  And plaintiff further says that defendant carelessly and
negligently omitted to place around said machinery a proper
protection or to enclose it in a proper framework.  Said build-
ing is occupied by Messrs. Rockwell and Churchill, and used as a
printing establishment.  And plaintiff says she was in the em-
ploy of said Rockwell and Churchill, and was at work in said
building on the fifth day of February, A. D. 1887; while attend-
ing to her duties and in the exercise of due care, a portion of
said defective machinery of the defendant's, namely, a large
pulley and a piece of shafting, fell from the top of the room
in which plaintiff was, striking plaintiff on the head, knocking
her down, and crushing her head and breaking the bones of the
face in a number of places, and she was otherwise greatly in-
jured, which rendered plaintiff unconscious for a long time,
whereby she suffered great agony, permanent injury, and dis-
figurement, resulting in a long sickness, from the effects of which
she has not recovered.  And plaintiff says she has been inter-
nally injured by the violence of the injury and the general shock,
inasmuch as before said injury she was strong and healthy, and
was able to attend to her usual avocations, and she is now un-
able so to do owing to lameness, nervousness, and pain."

The second count was as follows: "And the plaintiff says, on
the fifth day of February, A. D. 1887, while in the exercise of
due care, she was injured by the falling of certain machinery in
a building No. 41 Arch Street, said injury being caused by the
negligence and carelessness of the defendant."

Answer, a general denial.

At the trial in the Superior Court, before *Barker*, J., it ap-
peared in evidence that the defendant, in 1876, became the
owner of a building numbered 41 Arch Street in Boston, in the
basement of which was a steam engine and boiler, by which
steam power was furnished to that building as well as to the
adjoining building numbered 39 on that street, and to a build-
ing beyond the same owned by one Amory; that in 1874 the
defendant's predecessor in title made an arrangement for hire
with the firm of Rockwell and Churchill, printers, who at that

time were tenants of the building numbered 39 Arch Street, which belonged to a third person, to supply them with steam power for use in their business, and for this purpose a shaft about ten feet long was run through a hole cut in the division wall between the buildings above the fifth floor of each ; that this shaft was supported by two hangers dependent respectively from the ceiling over the fifth floor in each building ; that the hanger in the defendant's building was let into a wooden partition enclosing a stairway which led up alongside the division wall from the fifth floor of his building ; that inside this partition, and between it and the division wall, there was upon this shaft an iron pulley, which carried the belt transmitting the power by means of belting and other shafting from the engine in the basement to the next building ; that directly beneath this pulley and this portion of the shaft was another stairway leading from the fourth floor to the fifth floor of the defendant's building, which stairway, except the lowest step, was cut off from the fourth floor by a wooden partition ; that this bargain for supplying power to Rockwell and Churchill in the building numbered 39 Arch Street was continued by the defendant after he became the owner of the building numbered 41 Arch Street, and the defendant was furnishing them steam power at the time of the accident at so much per horse power ; that up to April, 1882, the defendant's engineer in charge of the engine in the basement always oiled the shafting in the defendant's building, and laced the belts therein when necessary ; that in March, 1882, the defendant executed to Rockwell and Churchill a lease, which was introduced in evidence, of the second, third, and fourth floors of his building, which lease required them to " keep all and singular the said premises and fittings in such repair as the same are in at the commencement of said term, or may be put in by the said lessor or his representatives during the continuance thereof " ; that subsequently a door was cut through the division wall, and that firm went into occupation of the leased premises, and continued to occupy the same under the lease and a renewal thereof, and to use the same as composing and proof rooms ; and that Rockwell and Churchill used no steam power in the defendant's building, but continued to hire from the defendant the steam power used by them in the building numbered

39 Arch Street. The plaintiff contended that the shafting and belting on the fifth floor of the defendant's building were not covered by this lease; and the defendant contended that they were covered.

There was also evidence that on February 5, 1887, the plaintiff was in the employ of Rockwell and Churchill as a type-setter, and worked at a frame on the fourth floor of the defendant's building; that it was her duty, after filling a galley with type, to carry it up the stairway leading from that floor to the fifth floor; that on that day, as she was going up the stairway with a galley of type to put it upon the press, the shaft above described broke at a point over the stairway, and the end supported by the hanger fell with the pulley upon it, and, after striking the stairs, struck the plaintiff, causing the injuries in question; that just before the accident one Woods, foreman of the proof-room of Rockwell and Churchill, whose desk was on the fifth floor near the head of the stairs, had his attention called to the pulley and to a grating noise due to friction of the machinery, and sent a boy to tell the engineer that there was something wrong with the shafting; that, after thus sending the boy, Woods stood at the head of the stairs watching the shaft; that the shaft had begun to wabble, and as the wabbling increased Woods called out from the top of the stairs about five seconds before the shaft broke to keep off the stairs; that he was watching the shaft as it fell, and did not see the plaintiff as she came up the stairs; and that several of the employees of Rockwell and Churchill besides Woods saw that the shaft was bent and had begun to wabble, and heard the same grating noise from four to five minutes before the shaft broke and fell, and others who were at work near the plaintiff heard Woods tell the boy to go to the engineer and tell him that the shafting was out of order. The plaintiff testified that she remembered starting to go up the stairs with the galley of type, but remembered nothing further until she found herself in the hospital; that she was unable to recollect anything that occurred or was said in the room where she was at work before she was injured, except that something was said about picking up some type that had fallen upon the floor, nor did she recollect hearing Woods give any order to the boy.

There was also evidence, which was introduced by the plaintiff, against the defendant's objection, after the lease from the defendant to Rockwell and Churchill had been put in evidence, that the defendant's engineer in charge of the engine in the basement continued to oil the shaft which fell, and the other shafting on the premises covered by the lease, after the lease was given as well as before, and to lace the belts on this shafting when it was necessary, and that Rockwell and Churchill took no care of either the shafting or belting; and the defendant excepted. Evidence was also introduced, against the defendant's objection, that after the accident the broken ends of the shaft disclosed, upon examination, rust upon them extending from one third to one half way around the same, and dark streaks, as though there had been a flaw or previous crack in it; that a shaft hung like the one in question was insufficiently supported, and should have had an additional hanger in the middle for that purpose, which would have had a tendency to keep the shaft in place; that if there had been such a third hanger near the place of fracture, it might have held the shaft up; that if there had been shelving underneath the shafting, it would have tended to afford protection in case of a break, and might have prevented the accident, and that such shelving was very often placed under shafts like the one in question, where it was necessary for men and women to pass under it; that safety would have been promoted by a larger shaft than the one in question, and by placing a bench underneath the shaft; and that after the accident the defendant caused the stairs, which were broken and damaged by the fall of the shaft upon them, to be repaired, and also caused some wooden sheathing to be placed just beneath belting running near the ceiling above the fifth floor. There was no evidence that the attention of the plaintiff had ever been called to the shaft in question.

The defendant requested the judge to instruct the jury as follows:

" 1. On all the evidence, the action cannot be maintained against the defendant.

" 2. Upon all the evidence in the case, the duty of keeping in repair the shaft which fell and injured the plaintiff was the duty of the tenants to whom the premises were leased, and was not

the duty of the defendant, and the defendant is not liable for any injury which was caused to a person in the employ of the tenants by a defect in the shaft arising after the tenants went into occupation under their lease.

"3. Upon all the evidence in the case the duty of keeping in repair the shaft which fell and injured the plaintiff was the duty of the tenants to whom the premises were leased, and was not the duty of the defendant, and the defendant is not liable for any injury which was caused to a person in the employ of the tenants by a defect in the shaft existing before the tenants went into occupation under their lease, unless such defect was one which was known to the defendant or to his servants or agents, and was not known to the tenants, and could not have been discovered by them by a reasonable examination.

"4. If the shaft which fell and injured the plaintiff was negligently hung, or insufficiently supported by reason of having only two hangers to sustain it instead of three or more, or by reason of the places to which such hangers were secured, or for the want of other safeguards, and if the injury to the plaintiff was caused by such defects of hanging or want of supports or safeguards, or any of them, the defendant is not liable for such injury, if the condition of the shaft in these respects remained unaltered from the time of the leasing of the premises to Rockwell and Churchill up to the time of its fall, and the condition of the shaft in these respects was open to observation when the lease was made, or could have been ascertained by a reasonable examination.

"5. If it had become apparent to the foreman of the proof-room, and to other persons employed on the premises with the plaintiff, that the condition of the shaft had become dangerous, and that it was not safe to pass under it, in season to have warned the plaintiff from passing under it, and if, with ordinary care, the foreman or other persons would or might have warned the plaintiff of the danger, and have prevented her from passing under the shaft and receiving injury from it, the defendant is not liable.

"6. If Rockwell and Churchill were, under their lease, in possession of the stairs and stairway leading from the fourth to the fifth floor of No. 41 Arch Street, under the shaft which fell and injured the plaintiff, and were in control of the use of said

stairs and stairway, and if it had become apparent to them, or to their servants or workmen, before the injury to the plaintiff, that the condition of the shaft had become such as to make the use of said stairs and stairway unsafe, and they or their servants or workmen might, by the use of ordinary care, have prevented the plaintiff from using said stairs and stairway while so unsafe, and so have prevented the injury to her, then the defendant is not liable.

" 7. If, before the injury to the plaintiff, the condition of the shaft which fell and injured her had become such as to render the use of the stairs and stairway under it unsafe, and this was known to the tenants who were in occupation of the premises, or to their servants or workmen, in season to have prevented the plaintiff from passing over said stairs under said shaft and receiving her injury, then the defendant is not liable."

The judge declined so to instruct, except so far as the above requests were embodied in the instructions subsequently given by him; and, after instructing the jury that the defendant, under the terms of his lease to Rockwell and Churchill, was not answerable as owner of the building for the condition of the leased premises, and that the action could not be maintained against him as such owner, submitted the case to the jury upon instructions which permitted them to find for the plaintiff if they should find that the defendant as a furnisher of power merely, and not as owner or lessor, by means of appliances in his building, either by himself or by his servants, was negligent in thus transmitting power or in setting in motion or in operation machinery and appliances actually used by him in the leased premises for the purpose of thus transmitting power. The judge also instructed the jury, with reference to the question of due care on the part of the plaintiff, that no negligence of any other person employed by Rockwell and Churchill in those premises in the matter of an omission to give warning, if they found that there was such an omission, was to be imputed to this plaintiff as her negligence; but the question of due care, or want of due care, on her part, was to be decided by what they should find to have been her own action under the circumstances as they then existed, so far as those circumstances were then known to her.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

The case was argued at the bar in November, 1890, and afterwards, in September, 1891, was submitted on the briefs to all the judges.

*L. S. Dabney & H. Wheeler*, for the defendant.

*F. E. Snow*, (*C. E. Todd* with him,) for the plaintiff.

MORTON, J.   The ruling of the court, that, in consequence of the lease to Rockwell and Churchill, the defendant was not liable to the plaintiff by reason of his ownership of the premises was, to say the least, sufficiently favorable to the defendant. We need not consider carefully whether, under the terms of the lease, the shafting, belting, and pulleys, by means of which power was transmitted from the engine in the basement of 41 Arch Street to 39 Arch Street and the building beyond belonging to Mr. Amory, remained in the control of and were to be kept in repair by the defendant, or passed under the demise to Rockwell and Churchill, and were to be kept in repair by them. The plaintiff's case does not depend on that question; but rests on the proposition that the defendant, having undertaken for a consideration to transmit to 39 Arch Street and the building beyond power for the use of the tenants in those buildings, from the engine operated by him in the basement of his own building, was bound to exercise reasonable care to see that the pulleys and shafting which he used for that purpose were in a suitable condition to perform the work for which he was using them, without danger to persons rightfully on the premises, and themselves in the exercise of due care; and that if the defendant, or his servants or agents, were negligent in their use of the shafting and pulleys, or their management of the appliances by which power was transmitted from the engine in the basement of 41 Arch Street, and the plaintiff, being herself in the exercise of due care and rightfully upon the premises, was injured thereby, then she is entitled to recover of the defendant for the injuries so sustained.   In this view of the case, it is immaterial whether, under the terms of the lease, Rockwell and Churchill or the defendant were to keep the belting, shafting, and pulleys in repair.   If Rockwell and Churchill were to keep them in repair, and did not, still their negligence did not excuse the defendant for the want of due care on his part.   It was his duty as an ordinarily prudent man to see that, as against persons

rightfully on the premises and in the exercise of due care, the shafting and pulleys which he was using were suitable and safe for the purpose, and that the appliances used by him for transmitting power were properly managed by his servants, and he cannot excuse his own want of care or that of his servants by showing that Rockwell and Churchill were bound to keep the shafting and pulleys in repair, and that if they had done so the accident to the plaintiff would not have happened. *Blessington* v. *Boston*, 153 Mass. 409, and cases cited. He used them as they were, and he must be held to have taken the risk attending their use. *Gill* v. *Middleton*, 105 Mass. 477. *Priest* v. *Nichols*, 116 Mass. 401.

These considerations dispose of the second, third, and fourth requests for rulings by the defendant, and also of his objections to the introduction of the evidence by the plaintiff tending to show that the shaft was not sufficiently supported and should have had an additional hanger, that a shelf underneath it would have tended to afford protection and was often placed under shafts similarly located, and that safety would have been promoted by a larger shaft. This testimony bore directly upon the question whether the defendant was justified, as a man of ordinary prudence and care, in using the shaft and pulleys as they were, and was plainly admissible upon that issue. The defendant also objected to the admission of testimony by the plaintiff tending to show that an examination of the broken ends of the shaft was made after its fall, and that there were dark streaks as though there had been a flaw or previous crack in it, and rust extending for one third to one half way through. The objection was put on the ground that it was not admissible under the declaration. But it was clearly allowable under the second count. This count was not demurred to, and though imperfectly drawn, no objection so far as the exceptions show was taken to it at the trial. *Eaton* v. *Fitchburg Railroad*, 129 Mass. 364. The defendant also further objected to testimony on the part of the plaintiff tending to show that after the accident he (the defendant) repaired the stairs where the fall of the shaft broke and damaged them, and caused some wooden sheathing to be placed just under the belt which ran across the room just below the ceiling of the fifth floor; and he objected, after the lease had

been admitted, to the introduction of testimony that the defendant's engineer oiled the shafting that fell, and the other shafting in the second, third, and fourth floors in 41 Arch Street, and laced the belts on this shafting when necessary, and that Rockwell and Churchill did not take any care of it. But this was all competent for the purpose of showing that the defendant was using and exercising control over the shafting and pulley that fell, for the purpose of transmitting power to 39 Arch Street and the building beyond from his engine in the basement of 41 Arch Street. The vital question in the case was whether the defendant was using and exercising control over the shafting and pulley that fell for that purpose, and this testimony tended to show that he was. *Readman* v. *Conway,* 126 Mass. 374. Whether a portion of it was admitted before or after the lease was introduced could make no difference, and work no harm to the defendant. The lease from the defendant to Rockwell and Churchill could not bar the plaintiff from showing that the defendant was in fact using and exercising control over the shafting, belting, and pulleys for the purpose of transmitting power to other premises. *Gill* v. *Middleton,* 105 Mass. 477.

The defendant asked the court, in the fifth, sixth, and seventh requests which he presented, to rule, in substance, that if Rockwell and Churchill were in control of the stairway, or if they were not, and it had become apparent or known to them or their employees before the shaft fell that it was dangerous to pass under it or to use the stairs, and they knew of this in season to have prevented the plaintiff from passing over the stairs under the shaft, or with ordinary care on their part might have warned and prevented her from passing over the stairs, then the defendant was not liable. The court declined to rule as thus requested, and instructed the jury that no negligence of any employee of Rockwell and Churchill in omitting to give the plaintiff warning was to be imputed to her as her negligence, but the question of her due care was to be determined by her own action under the circumstances that existed, so far as these circumstances were known to her. We think that the court was right in refusing to instruct the jury as requested by the defendant. Neither Rockwell and Churchill nor any of their employees owed to the defendant the duty of warning the plaintiff against the danger.

Their failure to warn her does not constitute contributory negligence or a want of due care on her part, or relieve the defendant from the consequences of his own carelessness or that of his servants. If the omission of one co-servant to warn another co-servant of an impending danger could be said in any case to be the proximate cause of the injury to the latter, it is sufficient to say that the plaintiff. and the other employees of Rockwell and Churchill were not co-servants under the defendant, but under that firm. *Swords* v. *Edgar*, 59 N. Y. 28. *Galvin* v. *Mayor & Aldermen of New York*, 112 N. Y. 223.

The only question remaining is that of due care on the part of the plaintiff, which arises under the first ruling asked for by the defendant, that upon all the evidence the plaintiff was not entitled to recover. The plaintiff was a type-setter, and worked at a frame on the fourth floor, and when she had filled a galley with type, it was her duty to carry it to the fifth floor. She testified that she remembered starting to go up stairs with a galley of type to put it on the press, but remembered nothing more till she found herself in the hospital. It appeared that several of the employees of Rockwell and Churchill noticed a wabbling of the shaft shortly before it fell, and had heard a grating noise from it; and Woods, a foreman in their employ, sent a boy to the engineer to notify him that something was wrong about the shaft, and a few seconds before the shaft fell called out from the top of the stairs on the fifth floor to keep off the stairs. Several persons working near the plaintiff heard him tell the boy to go for the engineer, for the shafting was loose. It did not appear that the attention of the plaintiff was called by any one to the condition of the shaft, or that she heard any remark about it. She was attending to her work, and a want of due care cannot be imputed to her in failing to hear what was not addressed to her. At the time of the injury she was rightfully on the stairs, and no warning was given her specially. There was no reason why she should observe the condition of the shaft and pulleys, and if there had been, it was no more strange that she, with the galley of type in her hands, on which her attention was no doubt fixed, should not have noticed the shaft and pulley, or have heard the warning of Woods, than that Woods, standing at the top of the stairs and watching the shaft, and warning people to keep

off the stairs, should not have seen her as she was in the act of mounting them. Notwithstanding the blank in the memory of the plaintiff, the circumstances attending the accident were developed sufficiently to enable the jury to pass fairly upon the question of due care on her part, and it was properly left to them to do so. *Maguire* v. *Fitchburg Railroad*, 146 Mass. 379.

*Exceptions overruled.*