## MARY R. WARD *vs.* JOSEPH BLOUIN.

Worcester.    October 2, 1911. — October 17, 1911.

Present : RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DECOURCY, JJ.

*Practice, Civil,* Variance.    *Pleading, Civil.    Landlord and Tenant.    Negligence,*
*Due care of plaintiff.    Evidence,* Competency.

In the declaration and in specifications filed by the plaintiff in an action by a married
woman against the owner of a dwelling house for injuries suffered by her because
of the alleged defective condition of a step which the defendant was bound to
repair, the plaintiff alleged that the house was let to her.  At the trial of the ac-
tion her counsel in his opening address to the jury stated among other facts that
the premises were let to her husband.  A verdict was ordered for the defendant on
the offer of proof contained in the opening statement, and the plaintiff alleged
exceptions, at the argument of which in this court no question was raised by the
defendant as to the apparent variance between the declaration and the offer of
proof; and, because recovery by the plaintiff would not have been affected,
whether she or her husband was the defendant's tenant, this court gave no sig-
nificance to the variance except to call attention to its existence, but considered
only whether, if the other facts, which the plaintiff had offered to show, had
been proved the case should have been submitted to the jury.

At the trial of an action by a married woman against the owner of a three tenement
house to recover for injuries alleged to have been caused by a defective condition
of a step, the plaintiff's counsel in his opening statement to the jury offered to
prove that the plaintiff's husband had inspected the house when it was not
entirely completed and had selected one of the tenements, that he and the de-
fendant had agreed upon a rent and that he should take possession when the
defendant should notify him that the house was ready ; that later, upon the de-
fendant's notifying him that he could move in at any time, the plaintiff's husband
brought a load of goods to the house, that it appeared that cement steps which
were to be put in at the back of the house for common use of the occupants of
all of the tenements were not yet constructed and that there were no steps there ;
that, the defendant's attention being called to the need of a step, he produced a
box and placed it where the steps should be, stating "That will do for a while.  I
am going to get cement steps in in a few days " ; that the box became inadequate
and unsafe; that the defendant was spoken to by the plaintiff's husband and by
others repeatedly about the condition of the box and each time gave some excuse
and said that he would fix it in four or five days ; that the plaintiff did not think
that the box was as safe as steps would have been, but relied upon the assur-
ance of the defendant that steps would be constructed in a few days, and that
until that time she thought that she could get along with the box by using special
care ; that, a month after the box was placed in position, while the plaintiff was
using it as a step and using special care, it moved and she was thrown down.
*Held,* that on such facts, if proved, the jury would have been warranted in finding
that the plaintiff's injury was due to a negligent failure by the defendant to keep
the *temporary step* in as safe a condition as it was in when he put it there and
that the plaintiff was in the exercise of due care.

At the trial of an action by a married woman against the owner of a three tenement house, one of the tenements of which was let to her husband, for injuries resulting from the defective condition of a box which the defendant had supplied to take the place of a step and which had remained in common use by the occupants of all of the tenements against their objection and because of repeated assurances by the defendant that he would construct the steps in a few days, it is competent on the question of the plaintiff's due care for her to testify that "she did not think that the box was as safe as steps would have been, but relied upon the assurance of the defendant that steps would be constructed in a few days, and that until that time she thought she could get along with the box by using special care and did use special care in stepping on to it on each occasion and on the occasion of the injury."

TORT for personal injuries alleged to have been caused by a defective step provided by the defendant for use at the back of a house which the plaintiff in her declaration alleged that she had hired from the defendant. Writ dated August 6, 1910.

Specifications were filed by the plaintiff in which also she stated that she was the defendant's tenant.

The case was tried before *Morton,* J.

The plaintiff's attorney in his opening address to the jury, after reading the pleadings, " offered to prove that in March, 1910, the husband of the plaintiff went to inspect a new tenement house . . . and talked with the defendant, who was the owner and landlord; that the house was not then entirely complete, the finishing was to be done, floors to be laid, and painting and papering to be finished; that in that conversation the plaintiff's husband picked out the tenement upon the second floor of the house, agreed upon the rental of the same, and that he would take possession when the defendant should notify him that the house was ready for occupancy; that the house was a three tenement house with a flat on each floor; that in the latter part of April the defendant met the plaintiff's husband and told him that the house was ready to be occupied; that they could move in at any time, and that other tenants would move into the premises; that on the eleventh or twelfth of April the plaintiff's husband and herself together with one Mrs. Kimball, . . . who was to occupy the flat above that of the plaintiff and her husband, started to move into the house; that they first took a load of lighter articles on an express wagon and when they arrived at the tenement drove to the back door to unload and then for the first time found that the steps to that door had not been com-

pleted; that the defendant had constructed cement block walls on each side of the door and filled in between them a quantity of ashes and cinders to prepare the way for cement steps; that there was a space of two and one half or three feet between the top of the ashes. and the door sill; that when the Wards and Mrs. Kimball reached the back door, the women stepped off the express wagon on to the wall of cement blocks; that they could not step up from the wall to the door and that the husband of the plaintiff called the defendant who was present and called his attention to the situation; that the defendant then went to the cellar, got a box and placed it on top of the coal ashes, saying: ' That will do for a while. I am going to get cement steps in in a few days '; that the plaintiff and her husband and other tenants then moved into the building; that the box remained there something like a month and five or six days; that it wobbled and shook with the cinders under it and became worse as time went on; that it was not intended to be the permanent means of approach to that door; that the plaintiff's husband and other tenants called the defendant's attention to this insufficiency on two different occasions before the time of the plaintiff's injury, and that on each occasion he gave some excuse for not doing it at that particular time, but said that he would do it in four or five days; that the back door and this box were used in common by the three tenants in the building in reaching the back yard where the clothes lines were; that upon the nineteenth day of May, the plaintiff, living on the second floor, put her washing out in the back yard, [that later] she noticed something drop from the line and on to the ground and went down the back stair and out in the back hall, which was used in common by all the tenants, for the purpose of going out of the back door to pick up the article which had fallen from the clothes line, and stepped from the back door to the box which, as soon as she stepped on it, turned over and threw her violently to the ground causing her severe injuries."

The plaintiff also offered to prove that " she did not think that the box was as safe as steps would have been, but relied upon the assurance of the defendant that steps would be constructed in a few days, and that until that time, she thought she could get along with the box by using special care and did use

special care in stepping on to it on each occasion and on the occasion of the injury." The presiding judge ruled that the evidence set out in this paragraph would not be admissible.

The presiding judge ruled that, upon the pleadings and the offer of proof, no action could be maintained. He ordered a verdict for the defendant and reported the case for determination by this court, judgment to be entered on the verdict if the ruling was correct, and the case to stand for trial if the ruling was incorrect.

*H. W. Blake*, for the plaintiff.

*D. I. Walsh & T. L. Walsh*, for the defendant, submitted a brief.

SHELDON, J. No question has been made as to the apparent variance between the plaintiff's offer of proof and her declaration. Upon her offer of proof it was her husband and not herself who hired the tenement and became a tenant of the defendant. But this circumstance would not have prevented her from recovering upon a proper declaration if her husband could have recovered for a like injury to himself. *Wilcox* v. *Zane*, 167 Mass. 302. *Domenicis* v. *Fleisher*, 195 Mass. 281. We therefore consider the question upon its merits, as it has been argued by both parties.

The jury could find that the steps which the defendant was to put up and the box which he supplied for temporary use were, and were to remain, in his possession and control, and were intended for the common use of all the tenants in the house. If so, it was his duty, while the box remained in use as he had put it, to use reasonable care to keep it and the foundation of ashes and cinders upon which it rested in as safe a condition for its intended use as it was or appeared to be in when he put it there. *Looney* v. *McLean*, 129 Mass. 33. *Andrews* v. *Williamson*, 193 Mass. 92. But, as the plaintiff offered to show, it remained there for more than a month; it wobbled and shook upon the cinders under it and became worse as time went on. The defendant's attention was called to its insufficiency, and he gave excuses for doing nothing at that time, but said " that he would do it in four or five days." He still did nothing, although thus notified of the state of affairs; and finally, when the plaintiff was using the box as the defendant intended it to be used, it

turned over and threw her down, causing the injuries complained of. This would warrant a finding that the accident was due to a negligent failure on the defendant's part to keep the temporary step in as safe a condition as when he put it there, and so would entitle the plaintiff to recover if she was in the exercise of due care. The case. would come within the rules laid down by our decisions. See for example *Lydecker* v. *Brintnall*, 158 Mass. 292, 297 ; *Robbins* v. *Atkins*, 168 Mass. 45 ; *Harrinson* v. *Jelly*, 175 Mass. 292; *Lindsey* v. *Leighton*, 150 Mass. 285 ; *Cummings* v. *Ayer*, 188 Mass. 292.

That the defendant's duty to put up permanent cement steps rested merely upon his contract does not justify him in a negligent failure to keep the temporary substitute which he had provided from deteriorating and growing more unsafe than it was in the beginning. It was not a part of the construction or permanent arrangement of the premises, as in *Quinn* v. *Perham*, 151 Mass. 162, 163, *Moynihan* v. *Allyn*, 162 Mass. 270, *Phelan* v. *Fitzpatrick*, 188 Mass. 237, and other similar cases. The very fact that he allowed this merely temporary arrangement, intended to last only for a few days, to remain in use unattended to for more than a month, though aware of its growing insufficiency, might be found to show negligence. The liability which was enforced against a landlord in *Miles* v. *Janvrin*, 196 Mass. 431, and 200 Mass. 514, rested upon a contract. But the relation which in that case grew out of the contract between the parties, and by which the defendant was subjected to the burden of looking out for the safe condition of the leased premises, existed between these parties from the beginning, as to the steps and the substitute for them, by reason of the fact that they remained in the defendant's possession and control.

The jury could have found that the plaintiff was in the exercise of due care. *Faxon* v. *Butler*, 206 Mass. 500. *Frost* v. *McCarthy*, 200 Mass. 445. *Watkins* v. *Goodall*, 138 Mass. 533. *Dewire* v. *Bailey*, 131 Mass. 169. *Looney* v. *McLean*, 129 Mass. 33.

It was competent for the plaintiff to testify that she was using special care at the time she was injured, and that though she did not think the box as safe as the steps would have been, she relied upon the assurance of the defendant that steps would be

constructed in a few days, and thought until that time that she could get along with the box by using special care. This comes within the principle of *Malcolm* v. *Fuller*, 152 Mass. 160, and *Carriere* v. *Merrick Lumber Co.* 203 Mass. 322, 327.

*New trial ordered.*