Points Decided.

(April 8, 1920.)

# HELEN A. McKENNA and FRANCES PALMER Mc-KENNA, Appellants, v. LEO P. GRUNBAUM and STUDEBAKER BROTHERS COMPANY OF UTAH, Respondents.

[190 Pac. 919.]

Pleading and Practice — Nonsuit — Damages for Personal In-juries—Contributory Negligence—Landlord and Tenant.

1. A motion for nonsuit admits the truth of plaintiff's evidence and of every fact which it tends to prove or which could be gathered from any reasonable view of it, and he is entitled to the benefit of all inferences in his favor which the jury would have been justified in drawing from the evidence had the case been submitted to it.

2. Contributory negligence is generally a question of fact for the jury, and only becomes one of law, authorizing a nonsuit, when the evidence introduced on behalf of the plaintiff is reasonably susceptible of no other interpretation than that the conduct of the injured party contributed to his injury, and that, because of his negligence and carelessness, he did not act as a reasonably prudent person would have acted under the circumstances.

3. It is the duty of the landlord to use reasonable care to keep an elevator which remains under his control and is used in common by his tenants, or by himself and his tenants, in as safe condition as it was apparently in when the tenancy began.

4. The owner of leased property, in the absence of a contract to the contrary, is not bound to improve or repair it, but if he does so voluntarily, he may be liable for damages resulting from lack of reasonable care in so doing.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Charles P. McCarthy, Judge.

Action for damages. Judgment of nonsuit. *Reversed.*

4. For authorities passing on the question of liability of land-lord for injury to tenant from the negligent and unskillful manner in which the repairs are made by the landlord, see notes in 34 L. R. A. 830; 34 L. R. A., N. S., 806; 48 L. R. A., N. S., 921; L. R. A. 1916D, 1227; L. R. A. 1918E, 221.

J. B. Eldridge and Chas. F. Reddoch, for Appellants.

On motion by the defendant for nonsuit after the plaintiff has introduced his evidence and rested his case, the defendant must be deemed to have admitted all the facts of which there is any evidence and all the facts which the evidence tends to prove, and the evidence must be interpreted most strongly against the defendant. (*McAlinden v. St. Maries Hospital Assn.*, 28 Ida. 657, Ann. Cas. 1918A, 380, 156 Pac. 115; *Southern Idaho Conference Assn. etc. Adventists v. Hartford Fire Ins. Co.*, 26 Ida. 712, 145 Pac. 502; *Culver v. Kehl*, 21 Ida. 595, 123 Pac. 301.)

Where a landlord makes repairs, even though he is under no obligation to make them, he is liable for negligence. (1 Tiffany, Landlord and Tenant, p. 607; *Stewart v. Cushing*, 204 Mass. 154, 90 N. E. 545; *Colorado Mortgage & Inv. Co. v. Giacomini*, 55 Colo. 540, 136 Pac. 1039, L. R. A. 1915B, 364; *Broame v. New Jersey Conference Campmeeting Assn.*, 83 N. J. L. 621, 83 Atl. 901; *Upham v. Head*, 74 Kan. 17, 85 Pac. 1017; *Gill v. Middleton*, 105 Mass. 477, 7 Am. Rep. 548; *Wynne v. Haight*, 27 App. Div. 7, 50 N. Y. Supp. 187.)

Where a landlord undertakes to repair a defect in his premises, it is negligence not to repair it properly. (*Wilcox v. Hines*, 100 Tenn. 538, 66 Am. St. 770, 46 S. W. 297, 41 L. R. A. 278; *Lipschitz v. Rapaport*, 133 N. Y. Supp. 385; *Salvetta v. Farley*, 123 N. Y. Supp. 230; *Dicker v. Roossin*, 136 N. Y. Supp. 50; *Nash v. Webber*, 204 Mass. 419, 90 N. E. 872; *Carlon v. City Savings Bank*, 85 Neb. 659, 124 N. W. 91; *Finer v. Nichols*, 175 Mo. App. 525, 157 S. W. 1023.)

"Care in the construction and maintenance of freight elevators, while not as exacting as the rule of passenger elevators, is applied with full force under the reasonable ordinary care rule." (1 Thompson on Negligence, sec. 1081.)

In an action against landlord for negligence when employee of lessee was killed, evidence held to show landlord was guilty of negligence in maintaining elevator. (*La Pray v. Lavoris Chemical Co.*, 117 Minn. 152, 134 N. W. 313.)

In an action for injury from falling upon stairs in a building in control of defendant (tenant), the question of his knowledge is one for jury. (*Wheeler v. Sawyer,* 219 Mass. 103, 106 N. E. 592.)

The tenant (Studebakers) had possession of the building and retained possession of the elevator; hence they are liable for any defects of the shaft or gates for that reason. (*Thomas v. Vannucci,* 185 Ill. App. 414; *Hamilton v. Edwards,* 56 Pa. Sup. Ct. 403; *Alessi v. Fitzgerald,* 217 Mass. 576, 105 N. E. 437, L. R. A. 1916F, 1135.)

Though under no obligation to repair, landlord is guilty of negligence, and liable for injuries if he rents place in dangerous condition. (*Knight v. Foster,* 163 N. C. 329, 79 S. E. 614, 50 L. R. A., N. S., 286; *Mueller v. Phelps,* 159 Ill. App. 590; 9 R. C. L. 1251.)

The evidence was certainly sufficient to show negligence. (*Domush. v. Abraham,* 148 N. Y. Supp. 139, 140; *Pincus v. Schlechter,* 167 App. Div. 361, 153 N. Y. Supp. 67, 70.)

The question of contributory negligence was for the jury. (*Engel v. Smith,* 82 Mich. 1, 21 Am. St. 549, 146 N. W. 21; *Gordon v. Cummings,* 152 Mass. 513, 23 Am. St. 846, 25 N. E. 978, 9 L. R. A. 640; *Southern Building & Loan Assn. v. Lawson,* 97 Tenn. 367, 56 Am. St. 804, 37 S. W. 86; *Hydren v. Webb,* 219 Mass. 542, 107 N. E. 355.)

Where on undisputed facts reasonable and fair-minded men may differ as to the inferences and conclusions to be drawn, or where different conclusions might reasonably be reached by different minds, the question of negligence is one of fact to be submitted to the jury. (*Fleenor v. Oregon Short Line R. R. Co.,* 16 Ida. 781, 102 Pac. 897; *Calkins v. Blackwell Lumber Co.,* 23 Ida. 128, 129 Pac. 435.)

A. A. Fraser and Chas. M. Kahn, for Respondent Grunbaum.

The law is well settled that there are no implied covenants on the part of the landlord to repair the premises or to keep them in repair unless he has expressly covenanted to do so by

his lease. (*Russell v. Little,* 22 Ida. 429, 433, Ann. Cas. 1914B, 415, 126 Pac. 529, 42 L. R. A., N. S., 363; *Wilson v. Treadwell,* 81 Cal. 58, 22 Pac. 304; note to 3 Ann. Cas. 835.)

In the absence of warranty or representation, a landlord is under no duty to disclose to the tenant obvious defects-in the premises, especially where there is an equal opportunity for observation on the part of each party; and no liability is imposed on the landlord for his failure to make known such defects. Hence personal injuries suffered by the tenant therefrom are not recoverable from the landlord. (*City of Lewiston v. Isaman,* 19 Ida. 653, 655, 115 Pac. 494; *Hatch v. McCloud River Lumber Co.,* 150 Cal. 111, 88 Pac. 355; *Rhoades v. Seidel,* 139 Mich. 608, 102 N. W. 1025; *Barron v. Liedloff,* 95 Minn. 474, 104 N. W. 289; *Harpel v. Fall,* 63 Minn. 520, 65 N. W. 913; *Land v. Fitzgerald,* 68 N. J. L. 28, 52 Atl. 229; *Whitehead v. Comstock & Co.,* 25 R. I. 423, 56 Atl. 446; *Baker v. Moeller,* 52 Wash. 605, 101 Pac. 231; *Thompson v. Clemens,* 96 Md. 196, 53 Atl. 919, 60 L. R. A. 580; *Ames v. Brandvold,* 119 Minn. 521, 138 N. W. 786.)

The trial court should grant a nonsuit where the allegations of the complaint have not been sustained, and in the case at bar the nonsuit was granted not so much on the question of facts, but on the questions of law involved. (*Elder v. Idaho-Wash. Northern Ry. Co.,* 26 Ida. 209, 141 Pac. 982; *Antler v. Cox,* 27 Ida. 517, 149 Pac. 731; *Goure v. Storey,* 17 Ida. 352, 105 Pac. 794.)

Hawley & Hawley, for Respondent Studebaker Bros. Co.

A landlord is not liable for injuries resulting from obviously defective premises, known to be so by the tenant at the time of the leasing; the tenant assumes the risk thereof, and the rule of *caveat emptor* applies. (Note to *Walsh v. Schmidt,* 34 L. R. A., N. S., 799; note to *Hines v. Willcox,* 34 L. R. A. 824; *O'Malley v. Twenty-five Associates,* 178 Mass. 555, 60 N. E. 387; *Baum v. Ahlborn,* 210 Mass. 336, 96 N. E. 671; *Lyon v. Buerman,* 70 N. J. L. 620, 57 Atl. 1009.)

Where the landlord retains control of a freight elevator used in common, he is under the duty to maintain it in the condition in which it existed at the time the tenancy began, but is not bound to change its then mode of construction, or to remove the obvious sources of danger. (*Freeman v. Hunnewell,* 163 Mass. 210, 39 N. E. 1012; 8 Thompson, Negligence (White's Supp.), sec. 1138; *Andrews v. Williamson,* 193 Mass. 92, 118 Am. St. 452, 78 N. E. 737; *Mikkanen v. Safety Fund Nat. Bank,* 222 Mass. 150, 109 N. E. 889; *Flanagan v. Welch,* 220 Mass. 186, 107 N. E. 979; *Ten Broeck v. Deinhardt,* 120 App. Div. 473, 105 N. Y. Supp. 59; *Woods v. Naumkeag Steam Cotton Co.,* 134 Mass. 357, 45 Am. Rep. 344; *Ward v. Blouin,* 210 Mass. 140, 96 N. E. 61; *Green v. Pearlstein,* 213 Mass. 360, 100 N. E. 625; *Doyle v. Union Pac. R. Co.,* 147 U. S. 413, 13 Sup. Ct. 333, 37 L. ed. 223, see, also Rose's U. S. Notes.)

A tenant who, with full knowledge of the fact that a gate to a freight elevator is not working, knowing that the elevator is for freight only and that when used for freight a door must be opened wide and thereby the presence or absence of the elevator could be ascertained, walks hurriedly into the elevator entrance intending to use the elevator for passenger service, and, the gate being up and the elevator absent, falls into the shaft and is killed, is guilty of contributory negligence as a matter of law. (*Patterson v. Hemenway,* 148 Mass. 94, 12 Am. St. 523, 19 N. E. 15; *Amerine v. Porteous,* 105 Mich. 347, 63 N. W. 300; *Everard v. City of New York,* 89 Hun, 425, 35 N. Y. Supp. 315; *Hansen v. State Bank Bldg. Co.,* 100 Iowa, 672, 69 N. W. 1020; *McCarthy v. Foster,* 156 Mass. 511, 31 N. E. 385; *Kennedy v. Friederich,* 168 N. Y. 379, 61 N. E. 642.)

MORGAN, C. J.—On February 24, 1915, Frank J. McKenna, husband of Helen A., and father of Frances Palmer McKenna, was killed by falling down an elevator shaft in a building owned by Leo P. Grunbaum and leased by him, in 1909 and 1910, to Studebaker Brothers Company of Utah, a corporation, hereinafter called the company.

The building consisted of two stories and a basement and, on March 30, 1914, the company leased certain rooms on the

first and second floors to McKenna. At that time there was no entrance to the freight elevator from the room on the first floor let to him and thereafter used as a garage. It was stipulated in the lease that McKenna should have the free use of the elevator for carrying heavy freight and, until the company should provide an entrance from the room above mentioned, he should have a right of way thereto through a portion of the premises retained by it. The instrument also contained an option that McKenna might, at a future time, lease additional space in the building.

The entrance, thereafter constructed, consisted of a passageway, wide enough for an automobile and five or six feet long, extending from the garage-room on the first floor to the elevator. There was also an entrance from a room on the same floor, occupied by the company, and its employees and those of McKenna used the elevator in common. These entrances were equipped with doors which were usually closed in winter and, there being no artificial light therein, the shaft was dark. The floor of the entryway leading from the garage was on an incline, there being a fall of eleven and a quarter inches from the door to the shaft, which Grunbaum, after the accident, caused to be reconstructed and made level.

On September 14, 1914, Grunbaum caused a gate to be installed at the elevator shaft in the entrance leading from the garage. This gate was four and a half or five feet high and as long as the entry was wide. It was intended to work automatically, in slots attached to the walls, in such a way that when the elevator was at the first floor the gate would be up, but when the elevator left the floor the gate would drop down and obstruct passage from the entry into the shaft.

Part of the time this device worked satisfactorily and at other times, due probably to the material from which it was constructed being too light and it being insufficiently braced and one of the slots which had not been properly fastened to the wall getting sprung out of position, the gate would catch and hang, and when the elevator was at the second floor the gate would remain suspended so far above the first floor that it would leave the opening in the shaft unobstructed.

On January 16, 1915, the company leased to McKenna the property occupied by him together with other portions of the building. At that time the lease of March 30, 1914, was in full force, with more than four years yet to run, and it is not clear whether it was the intention of the parties that the new lease should supersede the old one or whether it was intended to continue the relation of landlord and tenant then existing in force, so far as it affected the part of the premises then in possession of the lessee. The case seems to be presented on the theory that the second lease supplanted the first, and that theory will be adopted for the purposes of this opinion.

While McKenna conducted a garage and machine-shop business in the building in question, he did so by agents and employees, he being employed elsewhere. It was his custom to visit the premises occasionally, for a few minutes at a time, usually early in the forenoon or late in the afternoon. The record does not disclose that he was in the elevator on more than two occasions, once a month or more before and again a day or two before his death. On these occasions the gate was not working properly and gave trouble.

On one or two occasions an employee of McKenna complained to the company's manager that the gate was not working properly, and the latter promised to have it corrected. This promise was communicated to McKenna a short time before the accident.

On the morning of the accident McKenna came into the garage at about 8 or 8:30 o'clock; it was a dark, cloudy morning and the sliding door on the garage wall at the entrance of the elevator shaft was partly closed, leaving an open space about two and a half or three feet wide. The shaft was dark, the elevator was at the second floor, and the gate was stuck and suspended near the ceiling. McKenna called to a companion, who had accompanied him to the garage, to come with him, walked rapidly down the incline, fell down the shaft and was killed.

The lease of January 16, 1915, after describing the property let, stating the term for which it was to run, the amount of

rent and when the same was payable, recites: "It is a further consideration of this lease that the said party of the second part [McKenna] shall have the free use of the elevator for carrying heavy freight up to the machine-shop." Thereafter, as theretofore, the employees of the parties used the elevator in common and control of it did not pass from the company. (*Ellis v. Waldron*, 19 R. I. 369, 33 Atl. 869.)

After introducing evidence tending to establish the foregoing facts and tending to prove the amount of damage they suffered by reason of McKenna's death appellants rested. Respondents moved for a nonsuit, which was granted, and a judgment of dismissal was entered.

The motions for nonsuit were based on a number of grounds, all of which have been considered, but only two of which will be discussed: First, contributory negligence, in that McKenna walked into the elevator shaft knowing the defective condition of the gate; second, when McKenna leased the premises the gate was defective and neither of the defendants owed him a duty to put or maintain it in a better condition than it was when his tenancy commenced.

In *Donovan v. City of Boise*, 31 Ida. 324, 171 Pac. 670, this court said: "A motion for nonsuit admits the truth of plaintiff's evidence and of every fact which it tends to prove or which could be gathered from any reasonable view of it, and he is entitled to the benefit of all inferences in his favor which the jury would have been justified in drawing from the evidence had the case been submitted to it."

In that case we also held: "Contributory negligence . . . . is generally a question of fact for the jury and only becomes one of law, authorizing a nonsuit, when the evidence introduced on behalf of the plaintiff is reasonably susceptible of no other interpretation than that the conduct of the injured party contributed to his injury, and that, because of his negligence and carelessness, he did not act as a reasonably prudent person would have acted under the circumstances." (See, also, *Smith v. Oregon Short Line R. R. Co.*, 32 Ida. 695, 187 Pac. 539.)

Even though McKenna knew the gate had not been in working order a day or two before his accident, it cannot be said, as a matter of law, he was guilty of negligence. In *Davis v. Pacific Power Co.*, 107 Cal. 563, 48 Am. St. 156, 40 Pac. 950, it is said: "People are liable to lapses of memory with reference to facts with which they are daily confronted. It would be for the jury to say whether such lapse of memory was negligence taking into consideration all the circumstances."

With respect to the second proposition it may be said that whether or not there was evidence which should have been submitted to the jury as to the liability of the company is to be determined by application of the rule that it is the duty of the landlord to use reasonable care to keep an elevator which remains under his control and is used in common by his tenants, or by himself and his tenants, in as safe condition as it was apparently in when the tenancy began. (*Flanagan v. Welch*, 220 Mass. 186, 107 N. E. 979; *Bogendoerfer v. Jacobs*, 97 App. Div. 355, 89 N. Y. Supp. 1051; *Ward v. Blouin*, 210 Mass. 140, 96 N. E. 61; *Greene v. Pearlstein*, 213 Mass. 360, 100 N. E. 625; *Oles v. Dubinsky*, 231 Mass. 447, 121 N. E. 405; *Andrews v. Williamson*, 193 Mass. 92, 118 Am. St. 452, 78 N. E. 737.)

In the case last above cited it is said: "The phrase 'in such condition as it was in or purported to be in at the time of the letting' means such condition as it would appear to be to a person of ordinary observation, and has reference to the obvious condition of things existing at the time of the letting."

The gate was a mechanical device which worked satisfactorily at times and at other times it did not. It is true a casual observer could see how it was constructed and the material of which it was built, but if we are to conclude from this he would be bound with notice of its defects, we must also conclude its builder knew it could not be relied on to work when he built it, for no one could be more familiar with its material and construction than was he.

Although there is evidence in the record from which it may be said to be established that McKenna knew the gate had

failed to work on one occasion before the lease was made, it does not follow the jury was bound to find he had knowledge of its defective condition. There is also evidence which would justify the conclusion it would have required an experiment or, perhaps, a series of experiments, to have discovered the real condition of that gate at the time the lease was entered into and the question of whether it would or not, as well as whether a reasonably prudent person situated as McKenna was at the time would have made such experiments, if they were necessary, in order to discover whether or not defects existed, should have been submitted to the jury.

There is nothing in the leases from Grunbaum to the company which obligated him to improve the premises or keep them in repair, and he was not bound to do so by reason of his ownership of the building, but, having voluntarily constructed the gate, if the jury should find the death of McKenna resulted from lack of reasonable care in its construction, and that the latter did not have notice of its defects when he entered into the lease and was free from contributory negligence at the time of the accident which resulted in his death, it would be justified in finding a verdict against the former. (*Gill v. Middleton,* 105 Mass. 477, 7 Am. Rep. 548; *Gregor v. Cady,* 82 Me. 131, 17 Am. St. 466, 19 Atl. 108; *Wertheimer v. Saunders,* 95 Wis. 573, 70 N. W. 824, 37 L. R. A. 146; *Barman v. Spencer* (Ind.), 49 N. E. 9, 44 L. R. A. 815; *Horton v. Early,* 39 Okl. 99, Ann. Cas. 1915D, 825, 134 Pac. 436, 47 L. R. A., N. S., 314; *Peerless Mfg. Co. v. Bagley,* 126 Mich. 225, 86 Am. St. 537, 85 N. W. 568, 53 L. R. A. 285.) He could not excuse want of care in constructing the gate on the ground that it was the duty of the company to make and keep the elevator safe. (*Poor v. Sears,* 154 Mass. 539, 26 Am. St. 272, 28 N. E. 1046.)

The judgment is reversed. Costs are awarded to appellants.

Rice, J., concurs.

Budge, J., did not sit with the court nor participate in the opinion.

(June 26, 1920.)

ON PETITION FOR REHEARING.

MORGAN, C. J.—Respondents have filed petitions for rehearing, which are denied. They contain suggestions, however, which prompt the following *addendum* to the foregoing opinion:

There was evidence that the defective condition of the gate was brought to the attention of the manager of the company; that he promised to repair it, and that the promise was communicated to deceased shortly prior to the accident which resulted in his death. The question of whether or not the promise was so made and communicated was one for the jury, and that evidence should have been submitted to it to be considered in connection with the defense of contributory negligence.

There is no merit in the contention that, at the time of the accident, McKenna was a trespasser.

Rice, J., concurs.