(No. 6154.   January 18, 1935.)

KENNETH K. BRANSON, Administrator of the Estate of JOHN K. PETERSON, Deceased, Respondent, v. NORTHERN PACIFIC RAILWAY COMPANY, a Corporation, and FRANK REGERIO, Appellants.

[41 Pac. (2d) 629.]

Cannon, McKevitt & Fraser and O. J. Bandelin, for Appellants.

Whitla & Knudson, for Respondent.

MORGAN, J.—Shortly after nine o'clock in the forenoon of October 8, 1932, John K. Peterson drove a loaded truck, to which was attached a hay rake, leaving a farm he had occupied during about three years previously. The main line of the Northern Pacific Railway Company ran through the farm, in an easterly and westerly direction, parallel to and a short distance south of a public highway toward which Peterson was going. Peterson drove the truck along a private road which crossed the railroad track at a private crossing, which road and crossing were used by all who had occasion to visit his premises, and had been so used during all the time he had occupied the place and many years prior thereto.

On the morning of October 8, 1932, the section crew of the railway company, by direction of its foreman, appellant Regerio, placed a small motor car, used in doing the work of the crew, on the south side of the railroad track on, or in close proximity to, the approach to the crossing. There is conflict in the testimony as to the exact position of the motor car, but the evidence sustains respondent's contention that it was placed about six feet south of the south rail of the track, and that the front and rear wheels on the east side of the motor car stood in the wheel tracks along the west side of the traveled part of the road. The crossing was planked 16 feet wide and the road approaching the planking was of varying widths of from 8 to 16 feet. According to the testimony on behalf of respondent the motor car was so placed that it obstructed the crossing and interfered with the passage of the rake.

The private road approached the crossing from the south on a curve until it reached a point 52 feet south of the railroad track, and weeds and brush had been permitted

to grow south of the railroad and west of the private road so that the view of the motor car was obscured until Peterson reached that point. View of the railroad track east of the crossing was unobstructed, but it approached the crossing from the west on a curve and through a cut, between 9 and 10 feet deep at the deepest point, and the right of way and land adjoining the cut, to the west of the private road and south of the railroad track were grown up with weeds and brush to such extent as to obstruct the view, from the road, of a train until it was within 300 or 400 feet of the crossing, the exact distance being in dispute.

As Peterson approached the crossing a boy, 17 years old, was riding with him in the cab and another boy, about the same age, was walking, or running, behind the truck. The boy in the cab testified both he and Peterson were looking for the approach of a train from the west as they came near the crossing, and they continued to so look until the truck reached the track. Apparently Peterson did not see the motor car until about the time the front of the truck reached the railroad, and the boy who was riding testified he did not, himself, see it until then. Peterson stopped the truck on the railroad track and asked the boy to look back and see if the rake would clear the motor car. He testified he did so and the rake would not clear, but the wheel, which was within a few feet of it, would strike the motor car near the middle if they went forward; that as he turned back from making this inspection he saw the locomotive of a train approaching from the west and it was from 100 to 150 feet away; that at about the time he saw the locomotive Peterson apparently saw it and that he, the boy, jumped from the right hand door of the cab and that Peterson was in the act of following him as the locomotive struck the truck.

The boy following behind the truck testified he first saw the motor car after the truck stopped, and after the boy riding with Peterson looked back he, the witness, saw the smoke from the locomotive when it was at a point about

300 feet west of the crossing; that he shouted at Peterson, who did not appear to hear him, and ran to escape injury.

As a result of the collision the truck was demolished and Peterson was killed. This action was prosecuted by the administrator of his estate. Defendants moved for a nonsuit and for a directed verdict in their favor. The motions were denied and the trial resulted in a verdict and judgment for plaintiff. Motions for judgment notwithstanding the verdict and for a new trial were made and denied and the case is here on appeal from the judgment and from the order denying the last mentioned motions.

Respondent relies on negligence of appellants, consisting of running the train at a high and dangerous rate of speed; of approaching the crossing without giving warning, and in placing the motor car on the private way in such position as to obstruct the crossing. Appellants denied negligence on their part and alleged Peterson's death was due to his negligence in his failure to observe the presence of the motor car before going on the crossing, and in its failure to stop or look or listen and thereby discover the approach of the train in time to prevent the accident. Respondent urges the doctrine of last clear chance and insists that, even if Peterson was guilty of contributory negligence in failing to observe the motor car and in going on the track, the engineer in charge of the locomotive saw, or with reasonable diligence would have seen, the truck on the track in time to have given warning of the approach of the train or to stop it or slow its speed, and that had he done so Peterson would have had time to and would have escaped.

Appellants complain of the admission of evidence that, until a short time prior to the accident, the railroad company had maintained a whistle post about 80 rods west of the crossing. This evidence was admissible as tending to show the company knew the crossing was so dangerous that, in the exercise of reasonable care and prudence, an alarm should be given as a train approached it from the west.

■ There is conflict in the evidence as to the speed at which the train approached the crossing. Witnesses on behalf of respondent estimated it to be from 55 to 60 miles per hour. The estimate of witnesses on behalf of appellants placed it at from 43 to 45 miles per hour. There is also conflict in the evidence as to whether any warning signal was given that the train was approaching the crossing. Whatever the speed of the train was, the evidence leaves no doubt it was being so run, on the curve and through the cut, that it was impossible to stop it within the engineer's range of sight along the track ahead and that, at the speed it was traveling, he could not have seen the truck in time to have avoided the collision. The question as to whether the train was negligently operated, in the particulars mentioned, was properly submitted to the jury.

■■ Whether the motor car placed on or near the road by appellants obstructed the crossing and whether Peterson should have seen it before he drove the truck on the track, or near enough to it to be within the danger zone, was also properly submitted to the jury. There was evidence tending to show, and it was sufficient to justify a finding, that had the motor car not so obstructed the road as to prevent passing with the rake, Peterson would have had time to drive across the railroad and through the danger zone, to a place of safety, before the arrival of the locomotive, and the collision would have been avoided.

■■ A motion for nonsuit admits the truth of all evidence introduced on behalf of plaintiff and he is entitled to have drawn therefrom all reasonable inferences favorable to him. (*Hopkins v. Hemsley*, 53 Ida. 120, 22 Pac. (2d) 138.)

The presence of the motor car on or near the private road has a direct bearing on the question of contributory negligence. Contributory negligence is generally a question of fact for the jury and is never one of law unless the evidence is reasonably susceptible of no other interpretation than that the conduct of the injured party contributed to his injury and that, because of his negligence and carelessness,

he did not act as a reasonably prudent person would have acted under the circumstances. (*Donovan v. Boise City,* 31 Ida. 324, 171 Pac. 670; *Smith v. Oregon Short Line R. R. Co.,* 32 Ida. 695, 187 Pac. 539; *McKenna v. Grunbaum,* 33 Ida. 46, 190 Pac. 919; *Testo v. Oregon-Washington R. & Nav. Co.,* 34 Ida. 765, 203 Pac. 1065; *Bressan v. Herrick,* 35 Ida. 217, 205 Pac. 555; *Williamson v. Neitzel,* 45 Ida. 39, 260 Pac. 689; *Stanger v. Hunter,* 49 Ida. 723, 291 Pac. 1060; *Pipher v. Carpenter,* 51 Ida. 548, 7 Pac. (2d) 589.)

■■ Whether Peterson was negligent in failing to observe the approach of the train while his attention was diverted to the motor car and while he was seeking to determine whether the rake would pass it, was a question for the jury. If the jury found he acted as a reasonably prudent person would have done under like circumstances, it properly concluded he was not guilty of contributory negligence. (*Newton v. Oregon Short Line R. Co.,* 43 Utah, 219, 134 Pac. 567; *Kirby v. Southern Pac. Co.,* 108 Or. 290, 216 Pac. 735; *Flannelly v. Delaware & H. Co.,* 225 U. S. 597, 32 Sup. Ct. 783, 56 L. ed. 1221, 44 L. R. A., N. S., 154; *Chicago & A. R. Co. v. Pearson,* 184 Ill. 386, 56 N. E. 633; *Butterfield v. Chicago R. I. & P. Ry. Co.,* 193 Iowa, 323, 185 N. W. 151.)

■ Assuming the jury found appellants were guilty of negligence in one or more of the particulars relied on by respondent; that their negligence caused the death of Peterson and the destruction of his truck, and that he was not guilty of contributory negligence, (and the evidence in support of such a finding is sufficient, if believed by the jury, to sustain it) then, in the absence of prejudicial error in the conduct of the trial, the judgment should be affirmed. If the jury found Peterson was guilty of contributory negligence, then the important question was as to whether the locomotive engineer, after he saw the truck in a place of danger, could have reduced the speed of the train and given warning of its approach so that Peterson would have been enabled to escape.

The engineer testified to having seen the truck when the locomotive was about 300 feet from it; that it appeared to him to be standing still about 10 feet from the track; that when he had traveled between 50 and 75 feet he discovered the truck was moving toward the crossing, and that he immediately used the emergency brakes, turned on the sand and shut off the throttle.

Considering the curve in the railroad, the cut and the growth of brush and weeds on and adjacent to the right of way, it was for the jury to say at what distance the engineer should have seen the truck, and whether he acted as a reasonably prudent person would have done under like circumstances. While his testimony is to the effect that he applied the emergency brakes as soon as he saw Peterson's danger, testimony on behalf of respondent is that the noise caused by the application of the brakes was not heard until immediately before the collision. It is shown, without conflict in the evidence, that no alarm was sounded after the engineer saw the truck.

Under the doctrine of last clear chance it was the duty of the engineer, seeing Peterson's danger, or being so situated that he should have seen it, to do all in his power to avoid injuring or killing him. Whether he should have applied the brakes sooner than he did in order to reduce the speed of the train and give Peterson more time than was given him in which to escape, and whether he should have sounded an alarm in order to warn him, were questions for the jury. (*Pilmer v. Boise Traction Co., Ltd.*, 14 Ida. 327, 94 Pac. 432, 125 Am. St. 161, 15 L. R. A., N. S., 254; *Anderson v. Great Northern Ry. Co.*, 15 Ida. 513, 99 Pac. 91; *Short v. Boise Valley Traction Co.*, 38 Ida. 593, 225 Pac. 398; *Bryant v. Hill*, 45 Ida. 662, 264 Pac. 869; *Hooker v. Schuler*, 45 Ida. 83, 260 Pac. 1027; *York v. Alho*, 52 Ida. 528, 16 Pac. (2d) 980.)

The instructions fully and fairly submitted these questions of fact to the jury, and while appellants assign some of them as erroneous, we find no prejudicial error in them.

The judgment and order appealed from are affirmed. Costs are awarded to respondent.

Holden, J., concurs.

Givens, C. J., and Budge and Wernette, JJ., concur in the conclusion reached.

Petition for rehearing denied.